*Attorney Grievance Commission of Maryland v. Allen Ray Dyer & Susan Baker Gray*, Misc. Docket AG No. 36, September Term, 2015.  Opinion by Getty, J.

**ATTORNEY DISCIPLINE – SANCTIONS – REPRIMAND**
Court of Appeals reprimanded lawyer who failed to adequately respond to Bar Counsel's lawful request that the lawyer respond to the allegations stated in a complaint made against him that had been filed with Bar Counsel, where the lawyer responded only by challenging Bar Counsel's authority to conduct "confidential" investigation under Maryland Rules and failed to provide any meaningful substantive response to Bar Counsel's request.  Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.1(b) (Disciplinary Matters) and 8.4(a) (Violating MLRPC).

**ATTORNEY DISCIPLINE – DISMISSAL OF CHARGES**
Court of Appeals dismissed charges remaining against first lawyer where there was not clear and convincing evidence that first lawyer violated any other MLRPC.  Court of Appeals also dismissed all charges against second lawyer where there was not clear and convincing evidence that second lawyer violated any MLRPC, including MLRPC 8.1(b), where second lawyer "adopted" first lawyer's response challenging Bar Counsel's authority but also substantively responded to Bar Counsel's request that she respond to the allegations stated in a complaint made against her that had been filed with Bar Counsel.

Circuit Court for Anne Arundel County
Case No. C-02-CV-16-0465
Argued: January 5, 2017

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 36

September Term, 2015

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

ALLEN RAY DYER
& SUSAN BAKER GRAY

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
*Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Getty, J.

_____

Filed: June 23, 2017

*Watts, J., participated in the hearing and conferencing of this case but recused herself prior to the adoption and filing of this opinion.

The road to Maryland's political graveyard is paved with multitudes of failed referendum petitions and good intentions of petition circulators and referendum strategists. The controlling statutes in the Maryland Code, Election Law Article for conducting a referendum petition drive present a veritable minefield of technicalities that can quickly scuttle and send awry the best-laid plans of citizen-activists seeking a voter referendum.

Prior cases before Maryland's appellate courts demonstrate the difficulties for an attorney advising clients mounting a referendum petition drive. For example, a signature on a petition can be declared invalid if it does not reasonably match the citizen's name as it appears on the voter registration rolls. *Howard Cnty. Citizens for Open Gov't v. Howard Cnty. Bd. of Elections*, 201 Md. App. 605, 625-29 (2011). Moreover, a county election board is not required to provide a citizens' group with prior notice or an opportunity to be heard before declaring signatures on a referendum petition invalid. *Id.* at 632. A shorter-than-normal deadline exists for requesting judicial review of an election board decision, and failure to meet the ten-day-filing requirement renders the submitted petitions time-barred. *Roskelly v. Lamone*, 396 Md. 27, 41 n.18 (2006).

In addition, under the Maryland Constitution's two-step process for filing signatures, failure to meet the first deadline by submitting one-third of the necessary signatures as verified by the local board of elections is a complete bar to the referendum process. *Cf. Selinger v. Governor of Maryland*, 266 Md. 431, 436-37 (1972) (holding petitioners were not entitled to bring bills to referendum where they failed to obtain one-half of the necessary signatures by the first deadline, as required by the relevant constitutional provision at that time); *see also* Md. Const. art. XVI § 3(b) (requiring one-

third of the necessary signatures by the first deadline).  In another case, this Court held that a fatally defective ballot question for a referendum vote regarding the zoning of a property in Anne Arundel County deviated from the terms of the statute, and thus the election result was declared void and treated as a nullity.  *Anne Arundel County v. McDonough*, 277 Md. 271, 307-08 (1976).

In this case, Allen Ray Dyer and Susan Baker Gray (collectively, "Respondents") represented a group of citizens engaged in a petition drive to take to referendum a zoning ordinance passed by the County Council of Howard County, Maryland.  As Ms. Gray attempted to navigate the technical obstacle course of the Election Law Article, the Election Director of the Howard County Board of Elections ("the Board") issued an adverse ruling.  The Election Director declined to certify the petition for placement on the ballot, explaining that the petition did not meet the statutory requirement that the petition must provide a fair and accurate summary of the aspects of the law being challenged.

Next, as Ms. Gray sought judicial review under the shortened deadline set by the 2014 election calendar, the Circuit Court for Howard County failed to notify her of a hearing on the consolidation of four court cases challenging the Board's conduct of the petition process.  As the litigation progressed, opposing counsel William E. Erskine, who represented builders and other business clients in opposition to the referendum effort, filed complaints against Ms. Gray and Mr. Dyer, who had joined the litigation as Ms. Gray's co-counsel, with the Attorney Grievance Commission, Petitioner, alleging misconduct related to the litigation.

It is in the context of this complex and contentious underlying litigation involving a local zoning referendum and petition drive that this attorney discipline proceeding originated. Under these circumstances, Respondents perceived that the system was rigged against their clients, and they must have felt like David versus Goliath. But instead of bringing a slingshot to the legal battle, they employed a strategy of ping-pong by bouncing the case to Maryland's appellate courts in response to negative rulings (whether real or perceived) by the circuit court. And when Mr. Erskine filed his complaints against Respondents in the middle of this contentious litigation, Mr. Dyer failed to respond substantively to Bar Counsel's lawful request for information concerning his position on the allegations in the complaint against him. Instead, he simply challenged Bar Counsel's authority to conduct a "confidential" investigation and refused "to participate in secret attorney grievance proceedings" on First Amendment grounds.

On August 26, 2015, on behalf of the Attorney Grievance Commission, Assistant Bar Counsel Lydia Lawless filed in this Court a "Petition for Disciplinary or Remedial Action" against Respondents, charging them with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.3 (Diligence), 1.4(a)(1), 1.4(a)(2), 1.4(b) (Communication), 1.16(a)(1) (Declining or Terminating Representation), 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.3(a)(1) (Candor Toward the Tribunal), 3.4(a), 3.4(c), 3.4(d) (Fairness to Opposing Party and Counsel), 3.7(a) (Lawyer as Witness), 4.1(a)(1) (Truthfulness in Statements to Others), 4.4(a), 4.4(b) (Respect for Rights of Third Person), 8.1(b) (Disciplinary Matters), 8.2(a) (Judicial and

Legal Officials), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct

that is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC).[1]

On September 3, 2015, this Court initially designated the Honorable Louis A.

Becker III of the Circuit Court for Howard County to hear this attorney discipline

proceeding. On November 30, 2015, in the Circuit Court for Howard County, Respondents

filed, among other things, a motion to transfer venue. On December 18, 2015, Bar Counsel

filed a response to the motion to transfer venue. On December 23, 2015, Respondents

attempted to re-file in this Court, among other things, the motion to transfer venue as well

as a supplement to the motion to transfer venue. On January 5, 2016, this Court issued an

order denying the motion. Then, on January 29, 2016, upon receiving the Circuit and

County Administrative Judge of the Fifth Judicial Circuit's request to transfer the case, this

---

[1] Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and renumbered. The revised Rules relevant to this case are now numbered as follows: Maryland Rule 19-301.1 (Competence), Maryland Rule 19-301.3 (Diligence), Maryland Rule 19-301.4(a)(1), Maryland Rule 19-301.4(a)(2), Maryland Rule 19-301.4(b) (Communication), Maryland Rule 19-301.16(a)(1) (Declining or Terminating Representation), Maryland Rule 19-303.1 (Meritorious Claims and Contentions), Maryland Rule 19-303.2 (Expediting Litigation), Maryland Rule 19-303.3(a)(1) (Candor Toward the Tribunal), Maryland Rule 19-303.4(a), Maryland Rule 19-303.4(c), Maryland Rule 19-303.4(d) (Fairness to Opposing Party and Counsel), Maryland Rule 19-303.7(a) (Attorney as Witness), Maryland Rule 19-304.1(a)(1) (Truthfulness in Statements to Others), Maryland Rule 19-304.4(a), Maryland Rule 19-304.4(b) (Respect for Rights of Third Persons), Maryland Rule 19-308.1(b) (Disciplinary Matters), Maryland Rule 19-308.2(a) (Judicial and Legal Officials), Maryland Rule 19-308.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), Maryland Rule 19-308.4(d) (Conduct that is Prejudicial to the Administration of Justice), and Maryland Rule 19-308.4(a) (Violating the MARPC). We will refer to the MLRPC because the alleged misconduct at issue occurred before this change.

Court designated the Honorable Ronald A. Silkworth ("the hearing judge") of the Circuit Court for Anne Arundel County to hear this attorney discipline proceeding.[2] On March 14, 15, 16, 17, April 1, 4, 5, and May 5, 6, 9, 10, 11, 13, 19, 20, and 24, 2016, the hearing judge conducted a hearing. On October 7, 2016, the hearing judge filed in the Circuit Court for Anne Arundel County a 115-page opinion including findings of fact and recommended conclusions of law, which was filed in this Court on October 18, 2016. In his opinion, the hearing judge concluded that Respondents had not violated any of the MLRPC charged.[3]

On January 5, 2017, we heard oral argument. For the following reasons, we shall reprimand Mr. Dyer and dismiss the charges against Ms. Gray.

### BACKGROUND

The hearing judge made comprehensive findings of fact consisting of approximately seventy-five pages of his opinion and found the following facts, which we summarize.

On December 29, 1976, this Court admitted Mr. Dyer to the Bar of Maryland. On December 22, 1987, this Court admitted Ms. Gray to the Bar of Maryland. At all relevant times, both Respondents maintained solo law practices in Howard County.

### A. Howard County Zoning and Referendum Petition Process

The Howard County Zoning Board periodically submits a comprehensive zoning plan to the Howard County Council ("the Council") for review and approval. To enact the

---

[2] The Fifth Judicial Circuit includes Anne Arundel, Carroll, and Howard Counties.

[3] The hearing judge noted that, following the hearing, Bar Counsel withdrew its allegations that Respondents had violated MLRPC 3.3(a)(1) and 4.1(a)(1).

comprehensive zoning plan, the Council must pass an ordinance approving and adopting it, and the County Executive must sign the ordinance into law. Howard County citizens may challenge the law, or any portion of it, by submitting a referendum petition to the Howard County Board of Elections. Howard County Charter § 211. Pursuant to the Howard County Code, "[t]he form and content of a petition shall be consistent with the requirements of section 6-103 of the Election Law [Article] of the Maryland Code." Howard County Code § 10.402. Thus, a referendum petition must be signed by a specified percentage of the qualified voters of Howard County, and, among other requirements, must fairly and accurately describe the aspects of the law that are being challenged.

Section 6-202 of the Election Law Article of the Maryland Code provides for an "advance determination," a process by which referendum petitioners may contact the chief election official of the appropriate election authority—here the Election Director of the Howard County Board of Elections—and submit to him the proposed format of their petition, in advance of formally filing it, "for a determination of its sufficiency." Md. Code (2002, 2010 Repl. Vol. & 2014 Supp.), Election Law Article ("EL") § 6-202(a).[4] Once the

---

[4] Following the 2014 election, the General Assembly amended EL § 6-202 to make explicit the requirements of the Election Director when determining the sufficiency of a petition, which had been implicit in the previous version of the statute. *See* 2015 Md. Laws, ch. 82. As amended, the statute specifically states that when referendum petitioners submit a proposed petition format for review, "the election director of the local board shall determine the sufficiency of the local law . . . that is contained in the petition." Md. Code (2002, 2017 Repl. Vol.), EL § 6-202(b)(1). The statute further specifies that, "[i]f the election director determines that the summary of the local law . . . is insufficient, the election director shall provide the [petition's] sponsor with a clear, concise, and understandable explanation of the reasons for that determination." EL § 6-202(b)(2).

referendum petition is formally filed, if it satisfies all of the required criteria, the Election

Director must certify that the petition process has been completed and that the question has

qualified to be placed on the ballot.  In practice, anyone seeking to have a question placed

on the ballot must obtain a final judicial decision regarding its validity some time prior to

the third Monday in August of the year of the election, which is the deadline for the county

attorney to prepare and certify the question to the local board.  EL § 7-103(c)(3).  In this

case, the relevant deadline was August 18, 2014.

## B.      *Proceedings Before the Board and Initial Filings in the Circuit Court for Howard County*

On July 25, 2013, the Council enacted an ordinance adopting the 2013

comprehensive zoning plan.  On August 6, 2013, Citizens Working to Fix Howard County

("Citizens"), through its officers,[5] submitted a proposed referendum petition ("the

petition")[6] to the Board and requested an advance determination of its sufficiency.  Ms.

Gray, in conjunction with other lawyers, assisted in preparing and reviewing the petition

before it was submitted to the Board.  On August 20, 2013, the Election Director wrote to

Citizens, advising that the petition complied with the technical requirements for formatting

---

[5] Carol Jane Gray and Lisa Markovitz are Citizens' officers.  Susan Baker Gray is not
related to Carol Jane Gray.

[6] Howard County, Maryland Charter § 211(a) provides that "[t]he people of Howard
County reserve to themselves the power known as 'The Referendum,' by petition to have
submitted to the registered voters of the County to approve or reject at the polls, any law
or a part of any law of the Council."  Stated otherwise, a referendum petition is the process
by which the people of Howard County can refer a law passed by the Council to the people
of Howard County as a whole for final approval or rejection.

of the front page. The Election Director also advised that the back of the petition must include a fair and accurate summary of the law at issue, including the law's substantive provisions, and that, if only a summary was provided, a full copy of the bill must be available from the petition circulators. The Election Director stated that he had not made a decision as to whether the information in the summary complied with all legal requirements. Thereafter, the petition was circulated by, among others, Ms. Gray and Mr. Dyer for the required number of signatures. Ms. Gray was also involved in training some of the petition circulators concerning the legal requirements for gathering valid signatures.

On October 4, 2013, Citizens submitted to the Board a 777-page petition, containing 3,454 signatures. The Board accepted 2902 of the submitted signatures, and in a letter dated October 21, 2013, the Board advised Citizens that the submitted petition pages contained a sufficient number of valid signatures to continue the process of gathering signatures for the referendum process. The Board provided Citizens an additional thirty days to collect the required number of signatures.

On October 30, 2013, a group of individuals and entities with common interests in opposing the referendum effort (collectively, "Normandy") filed in the Circuit Court for Howard County a petition for judicial review challenging the Board's October 21, 2013 determination that there were 2902 valid signatures (hereinafter, "Case No. 866"). Mr. Erskine and Sang W. Oh represented Normandy. In a letter dated November 8, 2013, the Board advised Citizens' officers that Case No. 866 had been filed in the circuit court. Ms.

Gray did not receive a copy of the letter.[7]  Also on November 8, 2013, the Board filed in the circuit court a motion to dismiss Case No. 866, arguing that Case No. 866 was prematurely filed because the October 21, 2013 letter was not a final determination.  A courtesy copy of the motion was sent to one of Citizens' officers, but not to Ms. Gray.

In a letter dated November 26, 2013, the Election Director advised Citizens that it had submitted the required number of valid signatures.  However, the Election Director declined to certify the petition for placement on the ballot, explaining that the petition did not meet the requirement that a fair and accurate summary of the substantive provisions of the proposal was necessary if the petition sought to place a question on the ballot.

On December 5, 2013, Ms. Gray, on behalf of Citizens, its officers—Carol Jane Gray and Lisa Markovitz—and other individuals—Frederick Gray,[8] Alan Schneider, and Barbera Sieg—filed in the circuit court a petition for judicial review challenging the Board's November 26, 2013 decision that the petition did not contain a fair and accurate summary of the law (hereinafter, "Case No. 213").

Also on December 5, 2013, Mr. Erskine and Mr. Oh, on Normandy's behalf, filed in the circuit court a second petition for judicial review challenging the Board's findings of August 20, 2013, October 21, 2013, and November 26, 2013, concerning the

---

[7] Throughout the referendum effort and the proceedings before the Board, neither Mr. Dyer nor Ms. Gray represented Citizens.  In November 2013, Citizens retained Ms. Gray; in Spring 2014, Citizens retained Mr. Dyer.

[8] Susan Baker Gray is not related to Frederick.  Due to the common surname, we shall refer to Carol and Frederick by their first names.

determination of the number and sufficiency of the signatures submitted by Citizens (hereinafter, "Case No. 220").

The following day, on December 6, 2013, Ms. Gray, on behalf of Carol, Frederick, Mr. Schneider, and Ms. Markovitz, filed in the circuit court a complaint for declaratory judgment against the Board and the Election Director, seeking, among other things, certification of the petition (hereinafter, "Case No. 230").

On December 9, 2013, the Board, through its counsel, Gerald M. Richman, filed in Case No. 866 a supplemental motion to dismiss. The supplemental motion sought to dismiss not only Case No. 866, but also Case No. 213 and Case No. 220; the supplemental motion, however, was erroneously filed only in Case No. 866. A "service copy" of the supplemental motion was sent to Ms. Markovitz, but not to Ms. Gray.

On December 11, 2013, the circuit court issued a notice of hearing in Case No. 866, scheduling a hearing on the motion to dismiss for January 8, 2014. Although Ms. Gray and her clients were entitled to notice and to appear because their case, Case No. 213, was the subject, in part, of the supplemental motion, neither Ms. Gray nor her clients received a copy of the notice of hearing. And, although the time for Ms. Gray to file a notice of intent to participate in Case No. 866 had expired, Ms. Gray's clients, and not Ms. Gray herself, had been notified of the petition for judicial review on November 8, 2013. According to the hearing judge, the notification was sent before "[Ms.] Gray was meaningfully retained."

On December 16, 2013, Normandy filed in Case No. 866 an opposition to the motion to dismiss; the opposition was not sent to Ms. Gray.

## C.    *Consolidation and the First Round of Appellate Filings*

On December 26, 2013, the Board filed a motion to consolidate all four cases—Case No. 866, Case No. 213, Case No. 220, and Case No. 230; a copy of the motion was mailed to Ms. Gray.  On January 7, 2014, Normandy filed a "consent" to the Board's motion to consolidate in all four cases; a copy of the consent was mailed to Ms. Gray.  Also on January 7, 2014, Normandy filed in Case No. 230, a declaratory judgment action, a motion to intervene, and answer of interveners; a copy was sent to Ms. Gray.  Although, as of January 7, 2014, Ms. Gray had received the motion to consolidate, she "could not have received" the consent, motion to intervene, and answer of interveners mailed on January 7, 2014, the day before the January 8, 2014 hearing.

On January 8, 2014, the circuit court conducted a hearing in Case No. 866 on the Board's motion to dismiss.  Mr. Erskine, Mr. Oh, and Mr. Richman were present, but neither Citizens nor Ms. Gray had been notified of the hearing, despite being entitled to participate.  At the hearing, the circuit court confirmed that the hearing was scheduled only in Case No. 866, and Mr. Oh advised that the three related cases—Case No. 213, Case No. 220, and Case No. 230—were not scheduled for the January 8, 2014 hearing.  Mr. Oh also advised the circuit court of the various motions pending in the four cases.  The circuit court held the motion to dismiss *sub curia* until the Administrative Judge could consider the motion to consolidate.[9]

---

[9] Before the hearing judge, no evidence was presented concerning what, if any, information was provided to the Administrative Judge by the circuit court, including whether the circuit court had recommended consolidation of the cases.

On January 16, 2014, the Administrative Judge issued an order consolidating the four cases; Ms. Gray did not receive a copy of the order. The order specified that, moving forward, all pleadings were to be filed in Case No. 866. Also on January 16, 2014, the Administrative Judge issued an order of special assignment, assigning a specific trial judge to the consolidated case, renaming the consolidated case, and changing the case number to "866." The two January 16, 2014 orders were entered on January 23, 2014. After the orders were entered, the clerk noted on the docket that Case No. 213, Case No. 220, and Case No. 230 were "closed/inactive."

Because she had not heard anything from the circuit court, Ms. Gray went to the Clerk's Office and, at that time, learned of the consolidation and the closing by the clerk of Case No. 213, Case No. 220, and Case No. 230. Ms. Gray also noted what she considered discrepancies in the captioning of one or more of the cases. Ms. Gray also learned that a hearing on the Board's motion to dismiss had been scheduled and held on January 8, 2014. Due to her concerns about the cases, their status as closed, and the scheduling and conducting of a hearing without notice to her or her clients, on January 31, 2014, Ms. Gray wrote to the Administrative Judge and the specially assigned judge to express those concerns and to request that the circuit court take no action on any matter related to the cases until her clients had an opportunity to file motions to "address the problems they ha[d] found." Ms. Gray stated that neither she nor her clients had received any notice of any activity occurring in the cases, including copies of the circuit court's orders. Ms. Gray also stated that, after reviewing the tape of the January 8, 2014 hearing, the hearing "appear[ed] to be little more than an ex parte meeting between a Judge and

- 12 -

counsel representing parties opposing the referendum." According to Ms. Gray, at the hearing, the circuit court "offered the assistance of certain courthouse staff if opposition counsel needed assistance." Ms. Gray also noted that, as of January 30, 2014, all but one of the notices and orders were missing from the paper files and that neither calendar management nor the file desk at the courthouse could access those materials.

On February 3, 2014, Ms. Gray filed timely notices of participation in Case No. 866 and Case No. 220. On the same day, Ms. Gray filed a motion to alter or amend judgment, arguing that, if the January 23, 2014 consolidation order closed Case No. 213, Case No. 220, and Case No. 230, and "blend[ed] the parties and matters" in Case No. 866, "thus making the claims in the [other] cases effectively nonjusticiable and non-reviewable on appeal," then the consolidation order needed to be vacated and the closed cases reopened. In the motion, Ms. Gray also stated that it appeared that the intent of the consolidation order "was to eliminate the claims in the other cases by closing them without notice through the consolidation process, and then to use the [m]otion to [d]ismiss . . . in [Case No.] 866 to get that case dismissed, again without notice."

In a letter dated February 4, 2014, in response to Ms. Gray's January 31, 2014 letter, the Administrative Judge stated that the hearing on the motion to dismiss did not involve Ms. Gray's clients, so notice would not have been sent to Ms. Gray, and that no ruling on the motion to dismiss was made. As to consolidation, the Administrative Judge stated that, at the hearing on the motion to dismiss, the circuit court, on its own initiative, recommended consolidation, which, in turn, was communicated to her, and that she found the recommendation "to be appropriate and efficient for both the [circuit c]ourt and the

- 13 -

parties." The Administrative Judge also advised that the specially assigned judge had recused himself from the case and that the matter had been reassigned. Finally, the Administrative Judge advised that a status conference had been set for February 19, 2014, and that all parties and counsel were to be present.[10]

On February 7, 2014, the Board filed a response to the motion to alter or amend. And on February 18, 2014, Normandy filed a response in opposition to the motion.

On February 19, 2014, the circuit court held a status conference in Case No. 866, which was attended by Ms. Gray, Mr. Erskine, Mr. Oh, and Mr. Richman. At the status conference, in response to the circuit court's statement that all four cases had been consolidated and that all of the cases were before the circuit court "as if that was the original case," Ms. Gray stated that "three of the[] cases were closed and subject to appeal." The circuit court asked Ms. Gray what closed the cases, and Ms. Gray stated that the consolidation order closed the cases and that, according to the acting clerk, the cases were closed and subject to appeal. Ms. Gray expressed concern that a pleading filed in the consolidated case, which referenced a closed case, would "go into a closed case file and [would] never [be] docketed." Ms. Gray pointed out that the docket stated that the cases were closed. The circuit court stated that they could "clear up the docket if that [was] a

---

[10] The hearing judge found that Ms. Gray sought, in good faith, to correct the record and prevent any future issue like those she alleged occurred with the consolidation order and "ex parte" hearing. According to the hearing judge, "[Ms.] Gray's diligence is evidenced by her trip to the Clerk's Office to ensure the status of her cases and the respective filings."

problem," but that it was going to proceed and that all four cases were "still alive, they [were] just under one number, that's all that's been done administratively."

On March 4, 2014, Ms. Gray filed a reply to Normandy's and the Board's responses to the motion to alter or amend judgment, stating, among other things, that although she agreed with consolidating the cases, closing the underlying cases or making it so the cases "los[t] their individual identity" was "contrary to Maryland law." Ms. Gray also alleged that Normandy's counsel "went out of their way to make it seem like the decision to close these cases was an administrative decision made by the Clerk's [O]ffice."

On the same day, Ms. Gray also filed a "Motion to Ensure Court Order Reopening Cases is Effectuated and Motion to Correct the Docket" ("the Motion to Ensure"). In that motion, Ms. Gray argued that closing the cases after consolidation was inappropriate and stated that "the full explanation of th[e] process tells a highly irregular and inappropriate story of potential misconduct." Ms. Gray further contended that Case No. 866, "under which all the cases have been consolidated is the most tenuous of all the cases and the one most appropriately dismissed, which would have happened but for a series of unlikely events." According to Ms. Gray, once everything was "cleared up," the other cases could proceed "and any remaining details in the record corrected without all the confusion necessitated by improper and inappropriate actions by counsel for [Normandy], the Board . . . and its counsel, and the [circuit c]ourt." In the motion, Ms. Gray requested that Case No. 866 be dismissed.

On March 10, 2014, Normandy filed an opposition to the Motion to Ensure, in which it agreed that any inaccuracies and omissions in the docket should be corrected, but argued that all other requested relief should be denied.

On March 12, 2014, the circuit court conducted a motions hearing. At the hearing, the circuit court stated that, although "[t]here may be some issue of the effect of the consolidation," all four cases were now one case before the circuit court. Ms. Gray argued that there were four separate cases, three of them "closed cases with final judgments [and o]rders in the docket, closing those cases." The circuit court disagreed that the cases were closed, explaining, "[T]hey are open. That's what consolidation does. There is a mistake in the record, I'm going to correct that." The circuit court also stated that, although all of the cases were consolidated into one case, "all of the issues remain." On the same day, March 12, 2014, the circuit court issued an order denying the motion to alter or amend judgment. The circuit court also issued an order denying, in part, and granting, in part, the Motion to Ensure: denying the motion to the extent that it sought to reopen one or more of the cases that had been consolidated, but granting the motion to the extent that it sought an order directing the clerk to correct the docket in each of the cases that had been consolidated. On March 13, 2014, the two orders were entered.

On March 18, 2014, Ms. Gray filed two notices of appeal in Case No. 866—one related to Case No. 213 and one related to Case No. 230—that stated, in pertinent part: "[Carol] Jane Gray, Frederick Gray, Alan Schneider and Lisa Markovitz, registered Howard County voters and parties below, appeal the decision in this election[-]related matter entered on March 13, 2014." On the same day, on behalf of Carol, Frederick, Mr.

- 16 -

Schneider, and Ms. Markovitz, Ms. Gray filed in this Court two petitions for a writ of certiorari and a request for expedited review. The petitions were docketed as Petition No. 39 and No. 40, September Term, 2014. In the petitions, Ms. Gray asked "for direct and expedited review" of the circuit court's March 13, 2014 denial of the motion to alter or amend judgment "of its January 23, 2014 closing of this case without any review of its merits." Ms. Gray stated that the circuit court had "adjudicated all claims in this action in their entirety and the rights and liabilities of all parties to the action." In the petitions, Ms. Gray posed the following question: "Whether within the context of the decision-making required by [Md. Code, Election Law] § 6-208(a)(2) the [Board]'s one phrase determination that the referendum summary was not 'fair and accurate' is arbitrary, capricious and illegal as a matter of law[.]"

On March 21, 2014, this Court issued orders granting the petitions and assigning the petitions as Case No. 106 and Case No. 107, September Term, 2014. On March 25, 2014, the Board filed in this Court motions to strike the appeals, stating that the circuit court had not issued a final decision. On March 27, 2014, Ms. Gray filed a response to the motions to strike, arguing that there was a final appealable judgment and that, although the circuit court had stated that closing of the cases was an error on the part of the Clerk's Office, Citizens had moved to have the cases reopened eight times and, each time, the circuit court had denied the motions. Ms. Gray argued that it was "hard to imagine a clearer way the [circuit] court could have expressed its intent to keep the[] cases closed."

On April 1, 2014, in this Court, Ms. Gray filed a motion to strike Normandy as intervenors in the action, and on April 4, 2014, Normandy filed an opposition to the motion.

On April 8, 2014, in a per curiam order, this Court dismissed the petitions for a writ of certiorari, stating that "it appear[ed] that the Court lack[ed] appellate jurisdiction because the [c]ircuit [c]ourt has not entered final judgment and no appealable interlocutory judgment or collateral order has been rendered." The Court ordered each party to pay its own costs and fees, and remanded the cases to the circuit court.

On April 25, 2014, Ms. Gray filed in the circuit court a renewed motion to correct the docket to reflect that Case No. 213, Case No. 220, and Case No. 230 were open.

## D. *Initial Discovery and Motions Hearing*

On or about February 1, 2014, the Board propounded interrogatories on Citizens, which referenced Case No. 220 and Case No. 230. Ms. Gray answered the interrogatories.

On February 19, 2014, the circuit court conducted a status conference in the consolidated case, Case No. 866. At that time, the circuit court declined to stay Case No. 230, the declaratory judgment action, pending resolution of the judicial review matters, stating that the parties could proceed with filing motions and discovery. The circuit court established a scheduling order, setting the hearing date for the judicial review and declaratory judgment matters and setting the merits hearing date for the judicial review matters. As to Case No. 230, the circuit court stated that the declaratory judgment action would "be alive and well" even after the ruling on the judicial review cases, and that there would be "time to file further discovery," but that there was "no deadline of discovery or a motion for summary judg[ment] or anything else."

On February 24, 2014, the circuit court issued the scheduling order, providing that memoranda on the judicial review matters were to be filed by March 17, 2014, that a

motions hearing was set for March 12, 2014, and that a hearing on the merits of the judicial review matters was set for April 1, 2014. In order for the referendum to be placed on the November 2014 ballot, the Board needed a final judicial decision prior to the third Monday in August 2014, so that local officials could make the appropriate certifications to the Board for the November ballot. *See* EL § 7-103(c)(3).

On March 12, 2014, the circuit court conducted a motions hearing in Case No. 866. At that time, the circuit court granted Normandy's motion to intervene in Case No. 230, the declaratory judgment action, and permitted Normandy to conduct discovery. At the hearing, the circuit court and the parties discussed holding Case No. 230 in abeyance pending resolution of the judicial review matters. The circuit court denied Ms. Gray's motion for a protective order. The circuit court also heard argument on the Board's motion and supplemental motion to dismiss and Ms. Gray's motion to dismiss; the circuit court denied the motions.

On March 18, 2014, the parties filed memoranda in the judicial review matters, and thereafter filed timely reply memoranda. The judicial review matters were set to move forward with the merits hearing scheduled for April 1, 2014.

### E. *Postponement of April 1, 2014 Hearing and the Second Round of Appellate Filings*

On March 31, 2014, the Board's counsel, Mr. Richman, filed a motion to postpone the April 1, 2014 hearing "for [e]mergency and [l]egal reasons." Mr. Richman stated that he had recently been hospitalized and needed to withdraw from the case due to health issues. Mr. Richman also argued that, because Ms. Gray had filed a notice of appeal in one

of the judicial review matters, the circuit court could not proceed with the merits hearing in that matter. That same day, the Administrative Judge issued an order granting the motion to postpone and striking Mr. Richman's appearance. The order stated that the circuit court believed it "maintain[ed] jurisdiction."

On April 1, 2014, in Case No. 866, Ms. Gray filed a notice of appeal to the Court of Special Appeals, stating that Citizens was appealing the March 31, 2014 decision of the circuit court. The following day, on April 2, 2014, Ms. Gray filed a petition for a writ of certiorari in this Court. In the petition, Ms. Gray argued that the March 31, 2014 order "struck" the notices of appeal filed on March 18, 2014, and requested that this Court take jurisdiction in Case No. 866 "even though there ha[d] been no final judgment in th[e] matter." Ms. Gray argued that Normandy should not be a party, that the consolidation happened without notice after a "'secret' hearing," and that if the circuit court retained jurisdiction, it was doubtful the issue of whether the petition's summary was fair and accurate would be addressed "in a meaningful way." Referencing the irregularities she perceived in the cases, Gray stated, "The games that have been played and continue to be played by the [c]ircuit [c]ourt . . . with respect to these referendum cases must stop."

On April 8, 2014, Normandy filed in the Court of Special Appeals a motion to dismiss the appeal for lack of appellate jurisdiction, arguing that there was no final or appealable judgment or order issued by the circuit court. Normandy contemporaneously filed in this Court an opposition to the petition for a writ of certiorari making the same argument. On April 9, 2014, the Board, through its successor counsel, Kevin Karpinski,

filed in the Court of Special Appeals an emergency motion to dismiss the appeal for lack of appellate jurisdiction.

On April 8, 2014, this Court issued an order dismissing the petition for a writ of certiorari for lack of appellate jurisdiction. And, on April 25, 2014, the Court of Special Appeals dismissed the appeal. Neither this Court nor the Court of Special Appeals suggested that sanctions should be imposed on Ms. Gray for filing frivolous pleadings.

### F.     *Normandy Discovery Part I*

As stated above, on March 12, 2014, the circuit court granted Normandy's motion to intervene in Citizens' judicial review case and declaratory judgment action. On April 10, 2014, Normandy filed a counterclaim and crossclaim for declaratory judgment and injunctive relief ("the counterclaim"), alleging deficiencies with the signatures collected in support of the petition, including, among other things, the submission of signatures from individuals who were not registered Howard County voters. In the counterclaim, Normandy alleged that there were deficiencies with the petition circulators' affidavits and that the circulators did not comply with the Election Law Article when collecting signatures. Normandy requested an order declaring that Citizens had failed to submit the required number of valid signatures.

On April 16, 2014, Mr. Erskine wrote to Mr. Oh, Mr. Karpinski, and Ms. Gray, stating that he and Mr. Oh wanted to depose approximately sixty-five to seventy petition circulators, requiring an average of ten minutes per deponent. Mr. Erskine also stated that he and Mr. Oh wanted to depose Mr. Schneider, Carol, Frederick, Ms. Markovitz, and Ms.

Gray. Mr. Erskine provided his and Mr. Oh's availability for the proposed depositions, and requested a response from Ms. Gray and Mr. Karpinski.

On April 18, 2014, Ms. Gray responded to Mr. Erskine by email, asking for his "availability for an emergency hearing next week," and advising that Citizens would be filing a motion to strike the counterclaim and a motion for a protective order against the discovery. In an email sent later that same day, Ms. Gray told Mr. Erskine that "noting depositions to the circulators is improper." Mr. Erskine responded by email, asking why it would be improper to note depositions of essential witnesses. Ms. Gray did not respond to Mr. Erskine's email.

On or about April 22, 2014, after ignoring Ms. Gray's request for a date for an emergency hearing, Mr. Erskine issued subpoenas and deposition notices to the plaintiffs and nonparty petition circulators. The nonparty petition circulators were to appear on ten days' notice, and no document production was requested; by contrast, the plaintiffs were to appear on thirty days' notice and to produce extensive documentation. According to the hearing judge, the document request for the plaintiffs' depositions was "extremely broad and outside of the scope outlined in Normandy's Counterclaim."

On April 28, 2014, Ms. Gray filed a motion to strike or, in the alternative, to dismiss the counterclaim, a request for an emergency hearing, and a memorandum in support. In the motion, Ms. Gray argued that the discovery request was a "fishing expedition" meant to "derail[] th[e] referendum effort" and "to intimidate the entire Howard County community so that referendum efforts will never be mounted again."

On April 30, 2014, Mr. Dyer entered his appearance as Ms. Gray's co-counsel. Respondents filed a motion to quash the subpoenas and for a protective order, arguing that (1) the declaratory judgment action was closed; (2) the counterclaim was time-barred; (3) the declaratory judgment action could not proceed; (4) discovery was not permissible in referendum-related cases; (5) Normandy was not an aggrieved party; (6) the counterclaim was frivolous; and (7) issuing subpoenas to petition circulators violated the First Amendment. The motion was filed on behalf of Carol, Frederick, Mr. Schneider, Ms. Markovitz, "petition circulators and parties to all referendum cases, and Marie Kendall, Howard County resident and circulator, but not a party to these cases, on behalf of themselves and as representative of all petition circulators, and Citizens."

On May 1, 2014, on its own initiative, the circuit court stayed all proceedings, including discovery and motions, related to the declaratory judgment action. As of that date, there were several matters pending in the declaratory judgment action, including the motion to strike or dismiss the counterclaim, the motion for protective order, and the discovery depositions noted by Normandy. Following the circuit court's order, Normandy cancelled all pending depositions.

## G. The Third Round of Appellate Filings and May 14, 2014 Hearing

On May 6, 2014, Respondents filed a notice of interlocutory appeal, stating that Carol, Frederick, Mr. Schneider, and Ms. Markovitz were appealing the circuit court's

April 30, 2014 decision;[11] none of the petition circulators was named in the notice of appeal. On the same day, Respondents filed in this Court a petition for a writ of certiorari on behalf of Ms. Kendall and Ellen Long, nonparties, and on behalf of Carol, Frederick, Mr. Schneider, and Ms. Markovitz, plaintiffs, for the circuit court's April 30, 2014 order denying "a motion to quash discovery." In the petition, Respondents argued that Ms. Kendall and Ms. Long, as nonparty petition circulators, had a final order and thus a right to appeal the circuit court's denial of the motion for protective order. Respondents also argued that the interlocutory appeal was appropriate and that the circuit court's order denied Citizens' motion to strike the counterclaim without a hearing. The petition presented two questions for review: (1) "Did the [c]ircuit [c]ourt abuse its discretion in *sua sponte* staying, not denying, discovery?"; and (2) "Did the [c]ircuit court abuse its discretion in indefinitely staying the entirety of th[e d]eclaratory [j]udgment action?" Respondents requested that this Court grant certiorari, issue an order stopping all discovery, and order the circuit court to set a date by which to render final judgment on all referendum matters.

On May 9, 2014, Normandy filed an emergency motion to dismiss the appeal for lack of appellate jurisdiction, arguing that the circuit court had not denied the motion for protective order and that Normandy had not filed a response to the motion as the time to do so had not expired. Respondents did not file a response to the motion to dismiss.

---

[11] Although Respondents filed the notice of appeal as to the circuit court's April 30, 2014 decision, it appears that the notice of appeal was directed at the circuit court's May 1, 2014 order, which stayed all proceedings related to the declaratory judgment action.

In the meantime, on May 14, 2014, in Case No. 866, the circuit court conducted a hearing on the merits of the judicial review matters. After hearing argument from the parties on the judicial review matters, the circuit court addressed the declaratory judgment action. The circuit court explained that its intent had been to schedule a motions hearing in the declaratory judgment action after the merits hearing on the judicial review matters, but stated that, because an appeal had been filed, if Ms. Gray did not lift the appeal, it would not "do anything further." The circuit court proposed setting a date for a motions hearing in the declaratory judgment action within the next thirty days and "cut[ting] everybody loose to do [] discovery and whatever else." Ms. Gray responded that she had "a big problem saying we are going to let everybody loose to do discovery" when previously it had been agreed that everything would be finished by April 1, 2014. Ms. Gray also argued that the counterclaim was untimely filed under the Election Law Article. Ms. Gray proposed that the circuit court decide the judicial review matters as well as the motion to strike the counterclaim that had been filed in the declaratory judgment action. The circuit court responded that it could not decide the motion to strike because an appeal was pending in the declaratory judgment action and thus the case was stayed, and that it would decide only the judicial review matters and "let the chips fall where they may." Ms. Gray disagreed with the circuit court's statement that it could not decide any matters in the declaratory judgment action.

With respect to the appellate proceedings, on May 16, 2014, Respondents filed a motion to lift the stay on all proceedings except discovery. On that same day, this Court denied the petition for a writ of certiorari that had been filed on April 2, 2014.

- 25 -

On May 22, 2014, before the circuit court issued any order in response to the motion to lift stay, Respondents filed in the Court of Special Appeals an emergency petition for expedited certification of the circuit court's jurisdiction, in which they stated that the circuit court's stay "on the untimely filed duplicative" counterclaim, "for all practical purposes restarts the entire declaratory judgment action, making it . . . impossible to ever get this local ballot measure on the November ballot."  Respondents stated that it was "an egregious waste of all parties['] and the court's time and part of a relentless, frivolous and unprecedented effort to intimidate Howard County citizens and deprive them of their right to vote on the referendum in November."  Respondents requested that the Court of Special Appeals "certify" that the circuit court retained jurisdiction even though the Court of Special Appeals was considering whether to act upon the interlocutory appeal.

On May 23, 2014, the Court of Special Appeals dismissed the interlocutory appeal, granting Normandy's emergency motion to dismiss the appeal for lack of appellate jurisdiction.  No claim was made to that Court that Respondents had acted in bad faith or without substantial justification.

## H.     *Resolution of the Judicial Review Cases in the Circuit Court*

On May 28, 2014, the circuit court issued an opinion and order in the judicial review cases, affirming the Board's determinations, ruling that the Board correctly determined that the requisite number of valid signatures had been submitted and that the Board had correctly concluded that the summary was not fair and accurate.  As such, both Normandy and Citizens did not prevail on their individual petitions for judicial review.

## I.     *Resumed Litigation of the Declaratory Judgment Action in the Circuit Court*

On May 29, 2014, one day after the resolution of the judicial review cases, the circuit court received the order of the Court of Special Appeals dismissing the interlocutory appeal in the declaratory judgment action. The following day, May 30, 2014, Normandy filed a response to the motion to lift stay, requesting that the stay be lifted in all matters related to the declaratory judgment action. On June 1, 2014, the circuit court issued an order vacating the May 1, 2014 stay.

On May 30, 2014, Normandy filed a response to the motion to strike or dismiss the counterclaim, a motion to compel discovery, and a response to the April 30, 2014 motion to quash. Normandy argued that, because it was a party to the declaratory judgment action, it should be permitted to conduct discovery. Normandy requested that the circuit court compel the plaintiffs and nonparty petition circulators, Ms. Kendall and Ms. Long, to be deposed. As of that time, neither Mr. Dyer nor Ms. Gray nor their clients or other nonparty petition circulators had failed to comply with lawful discovery requests.

On June 9, 2014, Normandy requested a status conference as well as an emergency hearing on all outstanding motions in the declaratory judgment action. On the same day, Citizens filed a motion to dismiss based on res judicata, arguing that the circuit court's May 28, 2014 opinion and order resolved all of the issues between the parties. Normandy filed an opposition to the motion, arguing that the issues in the declaratory judgment action remained, and, specifically, that the circuit court had not considered the allegation that the petition circulators failed to comply with the Election Law Article.

*J.* *The Fourth Round of Appellate Filings and June 17, 2014 Motions Hearing*

- 27 -

On June 2, 2014, Citizens filed a notice of appeal to the Court of Special Appeals and a petition for direct appeal and a writ of certiorari in this Court, seeking review of the circuit court's May 28, 2014 opinion and order. On June 9, 2014, Normandy noted an appeal to the Court of Special Appeals; Normandy later withdrew the appeal without waiving its ability to participate. On June 19, 2014, this Court denied the petition for a writ of certiorari. Meanwhile, in the Court of Special Appeals, a briefing schedule was established, and oral argument was scheduled for August 3, 2014.

On June 17, 2014, the circuit court conducted a motions hearing in the declaratory judgment action. In support of its motion to compel, Normandy argued that discovery was sought from the petition circulators for the purpose of determining whether they had complied with the requirements of the Election Law Article when collecting signatures and whether there was any fraud. Citizens responded that discovery was inappropriate for several reasons, including that the petition circulators' First Amendment rights would be violated if they were forced to appear for deposition. After hearing argument from the parties, the circuit court stated that it did not find that having nonparty petition circulators deposed violated their First Amendment rights, and that nothing in the Constitution "require[d] that the depositions be quashed in any way." The circuit court granted the motion to compel discovery, denied the motion for a protective order, and stated that ten days' notice was appropriate.[12] After further argument at the motions hearing, the circuit

---

[12] The hearing judge noted that the depositions had never been scheduled and that, accordingly, the motion to compel was improper.

court denied the motion to dismiss for res judicata and stated that the case would proceed.

Following the hearing, the circuit court issued orders denying, without explanation, Citizens' motion to dismiss for res judicata, motion to dismiss or strike the counterclaim, and motion for protective order. The circuit court also issued an order granting Normandy's motion to compel, providing that (1) the plaintiffs "shall provide responsive documents that are within their possession, custody or control"; (2) the plaintiffs and nonparty petition circulators, Ms. Kendall and Ms. Long, must "attend and participate in duly noted depositions"; and (3) all "video depositions duces tecum are permitted with ten (10) days['] notice."

## K.    *Normandy Discovery Part II*

On June 20, 2014, Mr. Erskine emailed all other counsel and advised of his intention to take video depositions of the plaintiffs on July 8, 2014 and of twenty-five petition circulators on July 9 and 10, 2014. Mr. Erskine asked that other counsel inform him immediately, and no later than the close of business on June 23, 2014, if they or any of the plaintiffs had scheduling conflicts. On June 24, 2014, having not received a response from Mr. Dyer or Ms. Gray, Normandy issued notices of depositions to the plaintiffs, specifically, Frederick, Carol, Ms. Markovitz, and Mr. Schneider, for depositions on July 8, 2014. Between June 23 and 26, 2014, Mr. Erskine and his staff prepared and caused to be served subpoenas directed to the individual plaintiffs and approximately thirty subpoenas directed to petition circulators.

On June 27, 2014, Respondents advised their clients that depositions had been scheduled for July 8, 2014. Ms. Markovitz had a scheduling conflict and was scheduled to

travel to Europe, leaving on July 5, 2014, and returning two weeks later. Because Ms. Markovitz could not immediately reach Ms. Gray, she asked Carroll Holzer, an attorney who had represented her in an unrelated matter, to call Mr. Erskine and inform him of the scheduling conflict and to advise him that she was available for deposition on July 3, 2014. Ms. Markovitz did not fault Ms. Gray for the brief delay in response, especially because she knew that Ms. Gray's other clients in the case were being served notices at the same time. On June 27, 2014, Mr. Holzer called Mr. Erskine and explained that, although he was not representing Ms. Markovitz in the case, he had been asked to contact Mr. Erskine to see if it was possible to reschedule Ms. Markovitz's deposition from July 8 to July 3.

After that telephone call, Mr. Erskine emailed all counsel, advising that he would be willing to reschedule Ms. Markovitz's deposition for July 3, 2014, but before agreeing to do so, he wanted to confirm with all other counsel and parties to obtain their consent because the new deposition date would be provided with fewer than ten days' notice. In his email, Mr. Erskine also stated that a condition of his consent to the rescheduling was that Ms. Markovitz provide "copies of all documents responsive to the request for documents contained within Exhibit A of the Notice of Deposition previously forwarded to her no later than 48 hours prior to the rescheduled deposition."

Mr. Oh and Mr. Karpinski agreed to reschedule Ms. Markovitz's deposition. On June 28, 2014, Ms. Markovitz delivered the discovery documents to Ms. Gray. On June 28, 2014, having received no response from Mr. Dyer or Ms. Gray, Mr. Erskine emailed Respondents again asking whether they consented to rescheduling Ms. Markovitz's deposition. Mr. Erskine requested a response by noon on June 30, 2014.

On June 30, 2014, at 2:42 p.m., Mr. Erskine sent another email, advising that he had not heard from Mr. Dyer or Ms. Gray by noon, but was able to reach Ms. Gray by telephone, at which time Ms. Gray stated that she did not consent to rescheduling Ms. Markovitz's deposition. In his email, Mr. Erskine stated that, during their telephone conversation, Ms. Gray had stated that she was filing a notice of appeal as to the circuit court's denial of the motion to quash subpoenas and motion for protective order, as well as the circuit court's grant of the motion to compel discovery, and that she believed the declaratory judgment action would be stayed and that the scheduled depositions would not be able to occur. Mr. Erskine stated in the email that he informed Ms. Gray during the telephone call that "it was improper to file an interlocutory appeal over a discovery issue," and that, even if she did file such an appeal, the circuit court would retain jurisdiction and the depositions would proceed as scheduled. Mr. Erskine wrote in the email that, during the telephone call, he had advised Ms. Gray that, if she filed the interlocutory appeal in bad faith, he would move for sanctions. Mr. Erskine stated in the email that he would not consent to rescheduling Ms. Markovitz's deposition, that Ms. Markovitz would have to appear on the date and time originally noted, and that, if Ms. Markovitz did not appear, he would seek "to exclude any and all signatures collected by Ms. Markovitz from the referendum tally."

A few minutes after Mr. Erskine's email, Mr. Dyer replied by email, stating that he "strenuously object[ed] to [Mr. Erskine's] continued harassment of the parties and the non-parties," and that he recommended Mr. Erskine "speak to an independent ethics advisor as [he] seem[ed] to be headed down an illegal pathway that w[ould] not only result in

significant repercussions for [his] career but w[ould] also cast an ugly light upon the entire Maryland legal profession." Mr. Dyer ended his email by stating, "behave yourself."

Later that evening, Ms. Gray replied to Mr. Erskine's email, stating, "Thank you for acknowledging in our telephone conversation this afternoon that you fully agree that nonparty circulators have a clear right to an interlocutory appeal on discovery matters." Ms. Gray stated that she expected Mr. Erskine to notify the nonparty petition circulators that their depositions were to be stayed pending a decision on the merits of the appeal, and that remaining silent "evidences a clear intent to continue the intimidation and harassment of these individuals as a primary goal of [Mr. Erskine's] clients." As to the deposition of the plaintiffs, Ms. Gray stated, "[T]his is not run of the mill litigation as you contend; it is an election matter where the parties are exercising their most fundamental rights of political speech," and "[t]here has to be a right of interlocutory appeal when these First Amendment rights are being abused." Ms. Gray stated that there was evidence in the record that Normandy, "through their attorneys, the [Board], and with assistance from the court, are doing everything possible to ensure this referendum does not go on the November ballot." According to Gray, "[h]arassment and intimidation of circulators is just one very, very significant and effective method of derailing referenda, now and in the future," and that it was "impermissible."

According to the hearing judge, Respondents "informed their clients of the depositions and correctly informed them of their rights with respect to attending." The hearing judge characterized Mr. Erskine's behavior with respect to the depositions as

"overly aggressive," and remarked that the following testimony by Ms. Markowitz "best summarized" Mr. Erskine's behavior:

> [Mr.] Erskine went ahead and picked dates and started serving people having not attempted in good faith to schedule the depositions. Then only a few days after he claims to have first asked for dates, he filed the notices, and then started serving subpoenas right away, and continued to do so even after being told by [Ms.] Gray, [that] she felt the appeal stayed discovery.

## L.    *The Letter to the Editor*

On June 30, 2014, the *Baltimore Sun* published a letter to the editor authored by Respondents entitled "Intimidation tactics in play in referendum case." The letter to the editor stated, in full, as follows:

> We, as the attorneys for many Howard county residents who circulated a referendum petition to put on the ballot comprehensive zoning changes proposed by Ken Ulman and the Council in July 2013 and whose clients are not subject to developer issued subpoenas for filmed depositions, read your July 24 article ("New controversy erupts in referendum case") with deep concern.
>
> This is not a case where the developers have alleged anything suggesting fraud and have reported such to the Board of Elections. Even if depositions were appropriate, the developers and their attorneys are not even targeting depositions to a particular circulator or two in an attempt [to] get evidence substantiating their allegations. There is no articulated basis at all. Instead, developer attorney [Mr.] Erskine, enabled by the court, issued subpoenas and filed for writs of body attachment for 100-plus petition circulators, one of whom moved to California before being served and would be subject to interstate detainer and extradition back to Maryland. This is unprecedented.
>
> Government officials and the courts cannot side with unlimited money interests (in this case developer interest) to chill speech by 1) hindering the circulation of petitions or the number of voices circulating a petition 2) or engaging in action to keep something off the ballot.
>
> The Supreme Court exhorts time and time again the right of referendum once established, as in the Howard County charter, that all activities related to

referendum such as circulating the petition, are "core political speech for which First Amendment protection [is] at its zenith."

Developers hate that citizens got the needed signatures to put their zoning amendments to a vote. More than de[r]ailing the current referendum effort, the developers want to de[r]ail all future referendum efforts, through intimidation. Who will ever circulate a petition if they think there is any risk of being hauled in for a deposition and be intimidated by insinuating wrong doing on their part[?] Without immediate and substantial rectification of these gross miscarriages of justice, the referendum will be dead in Howard County for decades to come.

On August 13, 2014, as part of an article titled "Special appeals court strikes down Howard zoning referendum,"[13] the *Baltimore Sun* printed the following quote, attributed to Ms. Gray: "Unreported opinions are the way the appellate courts do their political dirty work . . . that tells you a lot." The hearing judge noted that the accuracy of the attribution was not proven by clear and convincing evidence because no testimony had been presented from the *Baltimore Sun* reporter or any other witness supporting the quote's accuracy.

## M.      The Fifth Round of Appellate Filings Part I

On June 30, 2014, Respondents filed a notice of interlocutory appeal and request for expedited review on behalf of the plaintiffs and Ms. Long and Barbera Wasserman, nonparty circulators, as representatives of a class of nonparty circulators. Respondents stated that they represented no circulators other than Ms. Wasserman and Ms. Long. On July 9, 2014, Normandy filed an emergency motion to dismiss the appeal for lack of appellate jurisdiction and a request for sanctions pursuant to Maryland Rule 1-341, arguing

---

[13] The hearing judge erroneously found that the quote attributed to Ms. Gray was printed "in the same article" as the letter to the editor. Although the parties did not except to this erroneous finding, for clarity, we have corrected the inaccuracy in our recitation of the findings of fact.

that the interlocutory appeal was not permitted by law. On July 14, 2014, Respondents filed an opposition to the motion to dismiss.

*N.* *Ongoing Discovery in the Circuit Court*

On July 2, 2014, on behalf of the plaintiffs and two nonparty petition circulators, Ms. Long and Ms. Wasserman, as "representative of all petition circulators," Respondents filed in the circuit court a motion to stay discovery. Although Respondents did not file a motion to shorten time to respond to the motion to stay, they attempted to have an emergency hearing conducted before the scheduled depositions.

Around that time, Respondents held a group meeting with their clients and other nonparty circulators, including those who were not their clients. Respondents offered to represent the nonparty circulators who were not already their clients if they faced sanctions for not attending depositions, and explained the type of sanctions that might occur as a result of not attending depositions. Respondents explained that they believed the subpoenas violated the nonparty circulators' First Amendment rights, but that the nonparty circulators should either comply with the subpoena or seek counsel. After the large group meeting, Respondents met with their clients and advised them that they would surrender their First Amendment rights if they attended the depositions. Respondents also advised their clients that, should the clients not attend the depositions, they would represent them to defend their constitutional rights.

On July 7, 2014, one day before the scheduled depositions of Carol, Frederick, Mr. Schneider, and Ms. Markovitz, Mr. Erskine emailed Respondents, stating that noting an interlocutory appeal of the discovery orders did not stay the enforcement of those orders

and that, unless the circuit court granted the motion to stay discovery by the close of business that day, he intended to proceed with the scheduled depositions. Mr. Erskine asked that, if Respondents advised their clients not to appear, that they advise him as much so that he could cancel the court reporter and videographer, saving approximately $1,500 in standby costs. Mr. Erskine advised that it would cost approximately $8,000 to reschedule the depositions of the plaintiffs and nonparty circulators. Mr. Erskine stated that he "fully intend[ed] to seek sanctions against each and every Plaintiff who might fail for any reason to appear" for the scheduled depositions, and that he would seek show cause orders for contempt of any nonparty circulator who failed to appear for the scheduled depositions. Mr. Erskine stated that, "in addition to seeking reimbursement of costs as an appropriate sanction for violation of the [circuit c]ourt's discovery order, [he] also intend[ed] to ask the court to exclude from the referendum tally any signatures collected by a Plaintiff or nonparty circulator who fail[ed] to attend their . . . deposition."

On July 7, 2014, at approximately 2:00 p.m., the circuit court informed Respondents that it would not rule on the motion to stay discovery prior to the scheduled depositions because Normandy's time to respond to the motion had not expired. Mr. Dyer immediately relayed that information to all of the lawyers involved. Respondents did not file a second motion for protective order or a motion to quash related to the second set of subpoenas issued by Normandy, but instead relied on previous arguments.

On July 7, 2014, at 4:21 p.m., Mr. Erskine emailed Respondents again stating that, unless the circuit court stayed its discovery orders, the scheduled depositions of the plaintiffs and nonparty circulators would occur.

On July 8, 2014, at 11:50 a.m., Mr. Dyer emailed Mr. Erskine, Mr. Oh, and Mr. Karpinski, stating that he was attaching a letter of representation for twenty-four nonparty petition circulators and that more clients were "expected." Mr. Dyer advised that he and Ms. Gray had advised their clients not to appear at the scheduled depositions because doing so "would constitute a waiver of their constitutional right to speech and because th[e] constitutional issue [was] before the Court of Special Appeals." Mr. Dyer also stated that Mr. Erskine's "efforts to depose the circulators of any referenda without proper cause constitute[d] a gross violation of the freedom of speech rights (including the most important speech right – political speech) of the circulators."

On July 8, 2014, at 12:33 p.m., Mr. Erskine emailed Respondents, stating that he had not agreed to postpone or cancel any of the depositions, suggesting that Respondents file a motion for protective order on behalf of the newly retained clients, and advising that, in the absence of a protective order, the depositions would proceed as scheduled. Mr. Erskine again reiterated his intent to seek appropriate sanctions for any witness' failure to appear at a scheduled deposition, including reimbursement of costs and the removal of any signatures collected by that witness. Mr. Erskine also stated that, because Respondents had advised that their clients would not attend the scheduled depositions, he was cancelling the court reporter and videographer unless he heard from them "now." Based on Respondents' advice, the plaintiffs and nonparty petition circulators did not attend the scheduled depositions.

On July 7, 2014, the day before the first scheduled depositions, Normandy filed in the circuit court a motion for sanctions pursuant to Maryland Rule 1-341 and a request for

a hearing, seeking sanctions for the filing of five allegedly unjustified interlocutory appeals and Respondents' alleged refusal to communicate with Normandy as to the scheduling of the depositions. Respondents did not file a response or opposition to the motion.

On July 9, 2014, Normandy filed in the circuit court a motion for sanctions pursuant to Maryland Rule 2-433 and a request for a hearing, seeking sanctions for the plaintiffs' failure to appear for their scheduled depositions. Respondents did not file a response or opposition to the motion. Later, on August 26, 2014, Ms. Markovitz, proceeding *pro se*, filed a late opposition to the motion.

Also on August 26, 2014, Respondents, on behalf of twenty-eight nonparty petition circulators, filed a limited appearance to oppose Normandy's motion for sanctions, arguing that depositions of the petition circulators violated the First Amendment.

### O. *Motions for Writs of Body Attachment*

On July 10, 2014, at 9:00 a.m., Mr. Erskine emailed Respondents to advise them that he would be preparing motions for writs of body attachment against each of the nonparty petition circulators who failed to appear at their scheduled depositions on July 9, 2014. Mr. Erskine stated that it was not his "intent[ion] to harass or intimidate any party or non-party circulator," but he had "no other viable option" to complete discovery in advance of the August 18, 2014 deadline. Mr. Erskine proposed "the following opportunity" to the nonparty witnesses so that they could avoid being "subjected to the embarrassment and humiliation of possible arrest": he would not file a motion for writ of body attachment for any nonparty witness who notified him by close of business that day

of their willingness to pick up a new subpoena and attend a rescheduled deposition within the next ten days. Mr. Erskine then stated,

> [I]n the unfortunate event that any of your clients shall suffer the humiliation and embarrassment of a Body Attachment it will be due only to the quality of the advice and guidance you choose to provide them going forward. In other words, it is not too late to correct improvident advice previously provided. I do hope for your clients' sake that you will take full advantage of this opportunity.

On July 11, 2014, Mr. Erskine filed twenty-six motions for writs of body attachment directed at nonparty petition circulators for their failure to appear at scheduled depositions.

In a letter dated July 15, 2014, Tanya Spann Roche, a nonparty petition circulator, wrote to the Clerk of the circuit court, and copied Mr. Erskine, stating that she had been out-of-state on a business trip between July 9 and 14, 2014, and thus was unable to attend the deposition scheduled for July 10, 2014. Ms. Roche stated that she was back from her business trip and available to attend a rescheduled deposition. On July 16, 2014, Mr. Erskine received a copy of Ms. Roche's letter, which he forwarded to Respondents by email, in which he stated that he would withdraw the motion for a writ of body attachment filed against Ms. Roche if she contacted him to reschedule her deposition. Mr. Erskine then requested that Respondents inform all of their clients that he would be willing to withdraw the motion for a writ of body attachment in exchange for the client attending a rescheduled deposition.

**P.      *The Fifth Round of Appellate Filings Part II and an Appellate Opinion***

On July 14, 2014, Respondents filed in this Court an "Emergency Petition for Direct Appeal Writ of Certiorari, Ancillary Injunctive Relief and Expedited Review," in which

they stated that the circuit court had "adjudicated all claims in each of the underlying cases appealed in their entirety, however, on June 17, 2014, the [circuit] court denied [their] motion for *res judicata*." The emergency petition posed the following two questions:

> (1) In an Election Law Article matter, where the circuit court judge has consolidated related election law cases and, after hearing argument, *inter alia*, on a requested declaratory judgment, enters the requested declaratory judgment into an order under a related case number, may the Court of Appeals take jurisdiction, under [the] Election Law Article, and review the [circuit] court's declaratory judgment even though the declaratory judgment case (#230) remains open in the lower court docket?

> (2) Whether the summary of the matters to be referred found on the back page of the referendum petition is 'fair and accurate' as required by Election Law Article § 6-201(c)(2)(i)?

On July 16, 2014, Normandy filed an answer to the emergency petition.

On August 6, 2014, the Court of Special Appeals issued an order dismissing the interlocutory discovery appeal, stating that the appeal was not allowed by law.

On August 13, 2014, in the appeal of the merits of the judicial review matters, the Court of Special Appeals issued an unreported opinion affirming the judgment of the circuit court, and concluding that "the misrepresentations in the petition were . . . so manifest and substantial that it is inconceivable that appellants did not know that their summary was not a fair and accurate representation of the contested provisions of the ordinance." The opinion was later reported on August 28, 2014.

On August 15, 2014, Respondents filed a petition for a writ of certiorari seeking review of the Court of Special Appeals' opinion. On August 19, 2014, this Court issued an order denying certiorari.

*Q.* ***The August 27, 2014 Motions Hearing***

- 40 -

On August 27, 2014, the circuit court conducted a motions hearing attended by Mr. Dyer, Ms. Gray, Mr. Erskine, Mr. Oh, Ms. Markovitz, and Skip Cornbrooks, successor counsel for the Board. Normandy argued that the case was moot because this Court had denied certiorari, and stated that there was no longer any need for discovery. Unsurprisingly, Respondents urged the circuit court to grant summary judgment in their favor in the declaratory judgment action and to put the referendum on the ballot. The circuit court stated because the Court of Special Appeals had affirmed its judgment and because this Court denied certiorari, "[t]hat ends the matter as far as the ballot goes" and the case was moot. According to the circuit court, the ruling in the case had been made and the merits had been decided.[14]

The circuit court then heard argument on the two pending motions for sanctions. At that time, Normandy withdrew the request for writs of body attachment and withdrew its request for sanctions as to the parties; instead, Normandy requested monetary sanctions against Respondents. The circuit court ultimately granted the motions for sanctions, ruling that Respondents had to pay $6000 for the work Mr. Erskine performed in responding to Respondents' appeals. In ruling on the motions for sanctions, the circuit court stated, in pertinent part,

> Now, when those notices of deposition were sent out, and I think that Ms. Gray did file a motion for protective order, that was my opportunity frankly

---

[14] The hearing judge noted that, as Respondents alleged, if the merits of the case were concluded as the circuit court believed, then the additional discovery sought by Mr. Erskine was unnecessary. According to the hearing judge, Bar Counsel "relie[d] upon [the circuit court]'s comment to support Mr. Erskine's complaint against Respondent[s], but ignore[d] the point of [the circuit court]'s comment entirely."

to step in and say, hey, wait a minute. And I'm going to tell you what - - I'll tell you what I would have done with that. I would have said yeah, some depositions will forward, but we're not going to do all these depositions. That's overwhelming. I'll give you six. Pick your number.

That's – and I don't normally say what I would have done because it really is moot now, but that's what I would have done. But I never had a chance to consider it because in the meantime Ms. Gray filed this appeal. And once there's an appeal, as I've said, the court is deprived of any jurisdiction to go forward.

So all of this stuff has continued to dwell about and it brings us then to the point that the case has been decided by the Court of Special Appeals. I've allowed a lot of argument, a lot of discussion today because it is important for people to be heard and I realize the frustration that nothing is happening that the citizens want at this point.

I think you're entitled to this explanation. You don't have to agree with me. You don't have to like it, but you're entitled to some explanation and I feel obligated to give it because I firmly agree that our system of justice is the best there is. I believe we're all blessed to be a part of it and I felt that way long before I went on the bench. And as I've said, you don't have to agree with me, but at least I'm obligated, I believe, to give you some information that I think is important.

Now, the issue before me today is this request, the request for sanctions. And it's true that all of these depositions were noted. And whatever you may think of the motivations of the parties, I accept the facts are that no one appeared and that they were advised not to.

I'm less concerned about that quite frankly than I am about the fact that a motion for protective order which is provided by the rules could have been – was filed and could have been heard and could have been dealt with. You know, we are a nation of laws. There are rules.

\* \* \*

But among the rules here is that once an appeal is filed, the court can't go forward. So once that appeal is filed, I didn't have any choice but just to sit back and let it happen until the Court of Special Appeals dismissed the appeal because it had no merit. It was without any substantial justification and it was against the rules.

- 42 -

I'm more concerned with the fact that the other parties in this case had to deal with an appeal improperly filed, because had I been able to deal with this here in court, we could have resolved this matter and moved on. You would have had some depositions. The citizens would have been protected in a much better way, but I never had that opportunity.

After the circuit court stated its oral ruling, Ms. Gray asked to correct the record:

We filed a motion to quash subpoenas and for protective order giving you the opportunity to do this. It was filed on April 30th, 2014. The court heard this motion on June 17th. . . . You heard that motion on that date and you denied the motion for the protective order.

In response, the circuit court stated that it was referencing "the protective order that could have been filed when those particular . . . notices of deposition went out." At the conclusion of the motions hearing, the circuit court issued an order consistent with its oral ruling, and on August 28, 2014, a judgment in the amount of $6000 was entered against Respondents.

### R.     The Final Round of Appellate Filings and Appellate Proceedings

At the August 27, 2014 hearing, the circuit court discussed issuing a final order dismissing the declaratory judgment action; as of September 10, 2014, no such order had been issued. On September 10, 2014, Normandy filed a motion to dismiss for res judicata and mootness. Respondents did not file an opposition to the motion to dismiss. Eventually, on October 16, 2014, the circuit court issued an order granting the motion and dismissing the case with prejudice.

In the meantime, on September 22, 2014, on behalf of Carol, Frederick, Mr. Schneider, Ms. Wasserman, and Ms. Long, Respondents filed in this Court a petition for a writ of certiorari, seeking review of the circuit court's June 17, 2014 orders denying the

motion for protective order and granting the motion to compel. Respondents requested that this Court vacate the discovery orders.

On September 26, 2014, on behalf of Carol, Frederick, and Mr. Schneider, Respondents noted an appeal to the Court of Special Appeals as to the sanctions award issued on August 28, 2014, as well as to "decisions rendered August 27, 2014." Respondents were not identified as appellants.

On November 7, 2014, on behalf of Carol, Frederick, and Mr. Schneider, Respondents filed another notice of appeal seeking review of the circuit court's October 16, 2014 order dismissing the declaratory judgment action.

"After some confusion," two separate cases were opened in the Court of Special Appeals, Case No. 1627 and Case No. 2091, September Term, 2014. On November 19, 2014, in Case No. 1627, Normandy filed a preliminary motion to dismiss the appeal for failure to preserve the issues, waiver, estoppel, and mootness; Normandy also requested sanctions pursuant to Maryland Rule 1-341 and requested a hearing. On December 1, 2014, Respondents filed a response to the motion to dismiss the appeal, contending that they were appealing both the sanctions and discovery issues, as well as the circuit court's alleged refusal to decide Citizens' motion for summary judgment "on the fairness and accuracy of the referendum summary as a mixed question of law and fact based on the evidence presented" and to decide other issues related to the complaint for declaratory judgment. The Court of Special Appeals denied the motion to dismiss the appeal, with leave for Normandy to request the same relief in its brief.

On March 23, 2015, the Court of Special Appeals established a briefing schedule for both appeals, requiring appellants' briefs to be filed by May 5, 2015, and requiring appellees' briefs to be filed by June 4, 2015. On April 28, 2015, Respondents filed a "Motion to Have Trial Court 'Record' Returned to Howard County Circuit Court to Have 'Record' Corrected to Make it Appealable and to Stay the Due Date for Appellants' Brief until 30 Days after the Corrected Record is Filed with Court." Normandy and the Board filed oppositions to the motion. On May 5, 2015, the Court of Special Appeals denied the motion.

On June 5, 2015, Respondents filed the appellants' brief in Case No. 1627, raising three issues: (1) whether the circuit court "impermissibly granted" the motion for sanctions against them, as counsel; (2) whether the circuit "court erred in finding that unlimited discovery as to petition circulators did not implicate their First Amendment rights"; and (3) whether the petition circulators had a right of interlocutory appeal. Respondents did not file an appellants' brief in the other pending appeal, Case No. 2091. As such, on July 2 and 6, 2015, Normandy filed in Case No. 2091 a motion to dismiss the appeal for failure to file an appellants' brief. On July 6, 2015, Normandy filed in Case No. 1627 a motion to dismiss and appellees' brief; in the motion to dismiss, Normandy contended that the appeal should be dismissed due to res judicata and a lack of standing. On July 16, 2015, Respondents filed in Case No. 2091 a response to the motion to dismiss, as well as a "Motion for Court Order Confirming that [Citizens'] September 26, 2014 and November 7, 2014 Appeals (Both as to the Same Matters in the Same Case) are Proceeding Forward

Under Case Number 1627, September 2014 Term, and that Case No. 02091 is an Erroneously Opened, Invalid Case Number."

On July 27, 2015, Respondents filed two appellants' reply briefs in Case No. 1627, in which they responded to the motion to dismiss that had been filed in Case No. 2091. On August 12, 2015, the Court of Special Appeals issued an order dismissing Case No. 2091 for Respondents' failure to file an appellants' brief.

On September 3, 2015, the Court of Special Appeals heard oral argument in Case No. 1627. After oral argument, Respondents filed a "Motion for Judicial Notice of Motions, Affidavits, Correspondence and Rulings in Court of Special Appeals No. 2091 September Term 2014," requesting that the Court of Special Appeals consider filings from Case No. 2091.

On September 24, 2015, the Court of Special Appeals issued an unreported opinion in Case No. 1627, dismissing the appeal and concluding that challenges to the circuit court's discovery orders were moot and that Citizens lacked standing to challenge the sanctions imposed against Respondents.

On October 9, 2015, Respondents filed in this Court a petition for a writ of certiorari, challenging the dismissal of Case No. 2091. Normandy filed a motion to dismiss, contending that the petition for a writ of certiorari was untimely filed. Respondents filed a response to the motion to dismiss, arguing that this Court should issue a writ of certiorari on its own motion for "housekeeping purposes."

On November 10, 2015, Respondents filed in this Court a petition for a writ of certiorari, seeking review of the Court of Special Appeals' unreported opinion in Case No.

1627, which had been issued on September 24, 2015. In the petition for a writ of certiorari, Respondents presented the following issues: (1) whether Normandy had standing to bring the counterclaim and to otherwise participate in the case and "whether courts had jurisdiction to act on these filings"; (2) whether the circuit court lacked jurisdiction to decide a motion to dismiss after Respondents had noted their appeal of the circuit court's August 27, 2014 "verbal order dismissing the case"; and (3) whether the First and Fourteenth Amendments had been violated. On November 23, 2015, Normandy filed in this Court an answer to the petition for a writ of certiorari, and on December 4, 2015, Respondents filed a response. On January 29, 2016, this Court issued an order dismissing the petition for a writ of certiorari in Case No. 2091, and another order denying the petition for a writ of certiorari in Case No. 1627.

### S.    Bar Counsel's Investigation

In a letter dated August 22, 2014, Mr. Erskine filed with Bar Counsel a complaint against Respondents, stating that it was his belief that he was obligated pursuant to MLRPC 8.3[15] to report Respondents' alleged misconduct. In the letter, Mr. Erskine alleged that Respondents failed to comply, and advised their clients not to comply, with the circuit court's June 17, 2014 order compelling discovery and the subpoenas issued, and that Respondents filed frivolous interlocutory appeals. In a letter dated September 2, 2014, Mr.

---

[15] MLRPC 8.3(a) provided, "A lawyer who knows that another lawyer has committed a violation of the [MLRPC] that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."

Erskine supplemented his complaint to include additional allegations concerning statements that Ms. Gray allegedly made about the judiciary.

In a letter dated September 15, 2014, Bar Counsel forwarded Mr. Erskine's two complaint letters to Respondents and requested a response to the allegations within fifteen days. In separate letters dated September 30, 2014, Respondents wrote to Bar Counsel. In his letter, Mr. Dyer voiced concern that the letter that he received from Bar Counsel was marked "PRIVATE AND CONFIDENTIAL," and advised that he demanded his "full rights under the First Amendment as applied to Commission proceedings by the Fourteenth Amendment," and that he refused to participate in private and confidential proceedings "until the legality of Maryland's confidential attorney grievance proceedings ha[d] been fully tested." Mr. Dyer contended that Maryland Rule 16-723 needed to be updated to be legally correct. Mr. Dyer ended his letter by stating that he was committed "to cooperating fully with the Commission with regard to any complaints, but only in a public proceeding that passes First Amendment strict scrutiny."

In her letter, Ms. Gray wrote, in pertinent part,

As an attorney who has spent almost the entirety of her 20 plus year practice working almost exclusively for local individuals and community groups against development proposals the communities consider adverse to them, I am chagrined and actually a little surprised at the depth to which these interests and their attorney, Mr. Erskine, have stooped this time to ensure that future referenda on land use matters will not happen again in Howard County in the foreseeable future, and if by some remarkable chance someone dares to attempt to take a land use decision to referendum, they will not be able to find an attorney to represent them. Simply put, this complaint is nothing more than a continuation of more than six months of attempted intimidation by Mr. Erskine of a broad array of members of the Howard [County] Community who dared to exercise their right to referendum as to what may be billions of dollars in development projects. This attempted intimidat[ion],

- 48 -

based on bald faced misrepresentations and deceit, is now directed at the attorneys, Mr. Dyer and myself, who tried to protect the clearly established First Amendment rights of our clients and secure for these individuals their Charter established right to vote on zoning matters. . . .

. . . [T]he referendum effort was squeaky clean. Unfortunately, the Board [] and subsequent judicial processes from which this complaint arises have not been so clean. The Board [] refused to certify the ballot question without supplying a judicially reviewable reason why. The judicial process was beset with procedural irregularities severely prejudicial to referendum advocates (including but not limited to: the holding of an ex parte hearing without notice to referendum advocates' counsel; the flagging of counsel's name in the court's computer system not to receive notices; the refusal of the court to give counsel dispositive notices; and the refusal of the court to hold requested hearings or hold them in a timely manner; the refusal of the court to record a hearing on dispositive matters; the alter[]ation of documents in the court's files to make it appear that petition circulators had engaged in fraud; and the list goes on). . . . In all the proceedings, misrepresentation by opposing counsel in papers was the norm.

\* \* \*

I would be happy to work with the [] Commission in public proceedings to "set the record straight" as to Mr. Erskine's complaint. It actually would be nice to have the opportunity to put forth publically the evidence on such things Mr. Erskine spoke about[.]

At the end of her letter, Ms. Gray stated that she adopted Mr. Dyer's letter and requested "the same opportunity to respond to Mr. Erskine's allegations in public proceedings."

In letters dated October 3, 2014, Bar Counsel wrote to Respondents, stating that "Maryland Rule 16-723(f)(1) [] provides that you may sign a written waiver of confidentiality which should remedy any concerns you have at this stage of our investigation." Bar Counsel also advised Respondents that they could waive their participation in the peer review process, if it proceeded to that point, and that the results thereafter would be the filing of a petition for disciplinary or remedial action. Bar Counsel

requested that Respondents respond to the complaint by October 17, 2014, and reminded them of their responsibility under MLRPC 8.1 to "not knowingly fail to respond to a lawful demand for information by a disciplinary authority."

In a letter dated October 17, 2014, Ms. Gray wrote to Bar Counsel, stating that, although she had reviewed Maryland Rule 16-723(f)(1), she "could find nothing that suggests that by executing a written waiver under th[e] Rule, [she] c[ould] make public Mr. Erskine's complaint against [her], make public [her] response, or make public other materials related to th[e] matter." Ms. Gray further stated,

> [T]his complaint arises out of a very public process – a referendum effort – where attempted intimidating of referendum supporters and their attorneys was the norm. This is unacceptable. I have not violated the [MLRPC] unless strenuously attempting to protect my clients[] from intimidation, and protect their First Amendment right of petitioning and right to vote, is such a violation. Unfortunately, a "closed," non-public, attorney grievance process can be improperly used to further intimidate, to shield the public from the facts regarding what happened with the referendum effort, and to preclude future . . . litigation. . . . Within the protections of the First Amendment . . ., I again restate my willingness to work with Bar Counsel to resolve the complaint against me in fully open and transparent process.

(Paragraph break omitted.)

In a letter dated October 17, 2014, Mr. Dyer wrote to Bar Counsel, reiterating his "refusal to participate in confidential attorney grievance proceedings pursuant to [his] rights under the [] First and Fourteenth Amendments." As to Bar Counsel's advisement with respect to a waiver of confidentiality, Mr. Dyer stated that he had "'concerns' relate[d] to the Commission's actions," and he inquired as to how any action of his under Maryland Rule 16-723(f)(1) could "bring the Commission into compliance with the law."

In letters dated October 29, 2014, Bar Counsel responded to Respondents, requesting that they sign a written waiver if they wished to forego confidentiality. Bar Counsel stated that Respondents' analysis of the First Amendment was not relevant to the request for a response to the complaint, and advised that Bar Counsel had the authority to investigate allegations of misconduct. Bar Counsel again reminded Respondents that an attorney's failure to respond to requests for information may result in disciplinary action.

In a letter dated November 24, 2014, Mr. Dyer responded to Bar Counsel, stating that he was "keeping with [his] steadfast refusal to participate in secret attorney grievance proceedings pursuant to [his] rights under the [] First and Fourteenth Amendments." Mr. Dyer advised that, because this Court has jurisdiction over attorney discipline cases, he would be asking this Court "to prohibit [Bar Counsel's] effort to violate [his] due process and free speech rights." Mr. Dyer stated that he would not file a "petition for writ of prohibition" until December 19, 2014, in the hopes that "the operation of the Commission can be brought within the bounds of the law without the intercession of the Court of Appeals."

In a letter dated December 4, 2014, Bar Counsel responded to Mr. Dyer, stating that his letter would be treated as a written waiver of confidentiality. Bar Counsel asked Mr. Dyer to "explicitly state [his] request(s)" with respect to what he wanted from Bar Counsel and/or the Commission. Bar Counsel again requested that Mr. Dyer respond to Mr. Erskine's complaint and advised Mr. Dyer that it intended to file a statement of charges no later than January 9, 2015.

In a letter dated December 20, 2014, Mr. Dyer responded to Bar Counsel:

I object to your decision to "treat [my Nov. 24, 2014] letter as a written waiver of confidentiality." As I explained . . . the "waiver of confidentiality" provided in the current rules is illusory because of the secrecy power retained by the [] Commission[.]

* * *

[] I repeat my willingness to work with the Commission on revising the existing Maryland Rules to align them with the U.S. Constitution. . . . I believe that, if the Commission were willing to join with me in requesting a Rules Committee review of those Maryland Rules governing the operation of the Commission in light of the specific Constitutional issues I have raised, there would be prompt action by the Rules Committee one way or the other.

. . . I [] offer to attend the January 9th [Rules Committee] meeting with you and, if asked by the Committee, answer questions about my concerns with the existing Rules.

In return, I ask that the Commission delay action on Mr. Erskine's complaint pending action by the Rules Committee.

[] I do not waive my option to petition the Court if I believe there is no further option but, in the meantime, I reaffirm my willingness to work with the Commission in a good faith effort to improve the Maryland Rules.

(First alteration in original) (paragraph break omitted).

In a letter dated December 23, 2014, Bar Counsel responded to Mr. Dyer, stating that the Commission would not join Mr. Dyer "in any presentation or request before the Rules Committee" and that the "filing of a Statement of Charges w[ould] not be delayed."

On January 7, 2015, in this Court, Mr. Dyer filed a "Petition for Writ of Prohibition and/or Mandamus or Other Appropriate Relief," requesting that this Court issue a writ of prohibition or mandamus "precluding the Commission from secret proceedings in any manner involving [Mr. Dyer] or any other person until the Maryland Rules governing the operations of the Commission have been amended to comply with the United States

Constitution." On January 23, 2015, Bar Counsel filed a response. On February 19, 2015, this Court issued an order denying the petition for writ of prohibition.

***T.      Other Findings by the Hearing Judge***

The hearing judge made these additional findings and conclusions concerning Respondents' representation:

> [Bar Counsel's] view, taken largely from opposing counsel's view of the conduct of the Respondents throughout the underlying litigation, is summarized by one paragraph of [Bar Counsel's] proposed findings of fact and conclusions:

> > The Respondents' conduct, taken as a whole, most certainly brings the legal profession into disrepute in violation of [MLRPC] 8.4(d). It would be hard to imagine lawyers' conduct which burdened the judicial process to a greater degree than the conduct of the Respondents. Virtually every step they took caused the court, their clients and the other parties to expend needless time, resources and energy. The Respondents' tactics violated their obligations, as attorneys, not only to the court and the judicial process but also their clients. All involved in the referendum litigation suffered as a result.

> In distinct contrast, the opinion of the Respondents' clients, many of whom are alleged to have been wronged by the Respondents' representation, is summarized best by a quote from [Ms.] Markovitz during [the hearing]:

> > "It's rare to have attorneys who will represent citizens in land use cases in Howard County, and [the Respondents] did so not only in great controversial issues, but also in a pro bono way. And often in controversial issues like this, people might have different opinions about strategy in a case, but always ended up with a consensus and I'm not displeased with [their] representation. And I think that the opposing counsel having made the [c]omplaint in this matter would sort of like nothing better than two less attorneys who are going to oppose land use clients in the future."

This Court has reviewed and considered the evidence in this case as well as the arguments of [Bar Counsel] and the Respondents. The Court has also had the opportunity to judge the credibility of the witnesses presented in this case. For reasons to be stated herein, this Court concludes that [Bar Counsel] has failed to prove, by clear and convincing evidence, that either Respondent violated the [MLRPC] as identified and proposed by [Bar Counsel]. This Court does not conclude that the Respondents were correct in every step they took or every argument made. That is seldom true in any litigation, much less litigation as contentious and complex as this turned out to be. However, it is clear to this Court that neither Respondent acted in bad faith or without substantial justification in their actions in this case.

In response to [Bar Counsel]'s overall analysis of the Respondents' conduct, this Court concludes that taken as a whole, their conduct did not bring the legal profession into disrepute in violation of [MLRPC] 8.4(d). To the contrary, the Respondents provided adequate, but not necessarily perfect, pro bono legal representation that probably would not have otherwise been available to their clients. They appropriately and adequately sought to assist their clients with the referendum litigation. They also sought to ensure that the First Amendment rights of their clients and nonparty circulators were protected from what they perceived to be unnecessary, improper and overbroad discovery requests initiated by opposing counsel, [Mr.] Erskine[.] They steadfastly opposed any effort to seek discovery that was clearly not limited to the specific issues in front of the [c]ircuit [c]ourt . . . and perhaps not even available in light of the late Declaratory Judgment filing by Mr. Erskine. Not only does this Court conclude that in doing so, they did not engage in frivolous actions, this Court concludes that their opposition was in good faith, legally and factually justified and appropriate.

Furthermore, the evidence is clear and convincing that the Respondents are not vexatious litigants and lawyers. To the contrary, they have spent most of their careers serving the public and providing pro bono legal services in matters such as the subject litigation over the zoning referendum in Howard County. Ultimately, while the Respondents were not successful in their administrative appeal, they were successful in protecting the First Amendment rights of their clients and the other non-party circulators. And, while each and every action that the Respondents took might not have been, in hindsight, the most correct choice, the issue in this case is not whether the Respondents were correct as a matter of law in their contentions, but rather whether they violated the [MLRPC] as alleged.

**STANDARD OF REVIEW**

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. *See* Md. Rule 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 588 (2016) ("This Court reviews for clear error a hearing judge's findings of fact." (brackets, citation, and internal quotation marks omitted)); Md. Rule 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. *See* Md. Rule 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

**DISCUSSION**

*A.      Exceptions to the Hearing Judge's Findings of Fact*

Respondents do not except to any of the hearing judge's findings of fact. The Commission excepts to many of the hearing judge's findings of fact or failure to find certain facts. We sustain one of the Commission's exceptions—that the hearing judge erroneously failed to find that Citizens received timely notice of the Board's motion to consolidate—and overrule the remainder of the Commission's exceptions to the hearing judge's findings of fact.

First, the Commission excepts to the hearing judge's finding that "Ms. Gray and her clients were entitled to notice [of the January 8, 2014 hearing] and to appear [at the hearing]

because their case, No. 2[13,] was the subject, in part, of the Board's Motion [to Dismiss]. According to the Commission, the January 8, 2014 hearing was scheduled on the Board's motion to dismiss, which had been filed only in Case No. 866, and as of January 8, 2014, the cases had not yet been consolidated, Citizens had not filed a notice of participation in Case No. 866, and Ms. Gray had not entered her appearance in Case No. 866.

The parties do not dispute that, on October 30, 2013, Normandy filed in the circuit court a petition for judicial review challenging the Board's determination that Citizens had gathered 2902 valid signatures for the referendum petition and that neither Carol nor Ms. Markovitz received notice that to oppose the petition for judicial review a party must respond within thirty days after receipt of notice of the petition. As of October 30, 2013, the date that Normandy filed the petition for judicial review in Case No. 866, Maryland Rule 7-202(d)(3) provided,

> Unless otherwise ordered by the court, the agency, upon receiving the copy of the petition from the clerk, shall give written notice promptly by ordinary mail to all parties to the agency proceeding that:
>
> (A) a petition for judicial review has been filed, the date of the filing, the name of the court, and the civil action number; and
>
> (B) a party wishing to oppose the petition must file a response within 30 days after the date the agency's notice was mailed unless the court shortens or extends the time.[16]

---

[16] On March 2, 2015, this Court adopted an amendment to Maryland Rule 7-202(d)(3), which became effective on July 1, 2015. The amendment specified the type of mailing (first-class mail, not ordinary mail) and provided for electronic notification in workers' compensation cases under certain circumstances. *See* Court of Appeals of Maryland, *Rules Order on the Supplement to the 186th Report of the Standing Committee on Rules of Practice and Procedure*, 124 (Mar. 2, 2015), http://www.mdcourts.gov/rules/rodocs/ro186supp.pdf [https://perma.cc/YQG7-3FYF].

The Board received a copy of the petition for judicial review, and on November 8, 2013, sent a letter to Carol and Ms. Markovitz that stated, in its entirety:

> Please be advised that on November 4, 2013, the [] Board [] received notice from the [c]ircuit [c]ourt [] that a Petition for Judicial Review had been filed opposing the referendum petition pertaining to CB 32-2013. Enclosed is a copy of the Petition.
>
> This office has an obligation to inform interested parties of the filing of a Petition for Judicial Review. Any questions you may have about the legal process should be directed to the [c]ircuit [c]ourt [] and any legal counsel.

Significantly, the Board's letter failed to notify Carol and Ms. Markovitz, in accordance with Maryland Rule 7-202(d)(3)(B), that "a party wishing to oppose the petition must file a response within 30 days after the date the agency's notice was mailed unless the court shortens or extends the time." In other words, neither Carol nor Ms. Markovitz were provided the required notice that they had thirty days from November 8, 2013, to oppose the petition for judicial review in the circuit court.

Next, as the hearing judge found, on November 8, 2013, the Board filed a motion to dismiss in Case No. 866. And, the parties do not dispute that, after Case No. 213 (Citizens' petition for judicial review) and Case No. 220 (Normandy's second petition for judicial review) had been filed, on December 9, 2013, the Board filed in Case No. 866 a supplemental motion to dismiss, which sought to dismiss not only Case No. 866, but also Case No. 213 and Case No. 220, cases in which Citizens and Normandy sought judicial review of the Board's determination as to the accuracy of Citizens' summary of the law and the sufficiency of signatures submitted by Citizens, respectively. The hearing judge

found that the Board erroneously filed the supplemental motion to dismiss only in Case No. 866. On December 11, 2013, after the Board filed the supplemental motion to dismiss, the circuit court issued a notice of hearing in Case No. 866, scheduling a hearing on the motion to dismiss for January 8, 2014. Neither Ms. Gray nor her clients received a notice of hearing, although the petition for judicial review that they filed, Case No. 213, was the subject, in part, of the Board's supplemental motion to dismiss.

Under these circumstances, we conclude that the hearing judge's finding that "Ms. Gray and her clients were entitled to notice [of the January 8, 2014 hearing] and to appear [at the hearing] because their case, No. 2[13,] was the subject, in part, of the Board's Motion [to Dismiss]" was not clearly erroneous. As discussed above, the Board did not provide Carol and Ms. Markovitz the required notice of the ability to oppose or otherwise participate in Case No. 866, and the Board erroneously filed the supplemental motion to dismiss only in Case No. 866, even though the Board's supplemental motion to dismiss sought to dismiss Citizens' petition for judicial review that had been filed in Case No. 213. Given the substance of Case No. 213 (Citizens' petition for judicial review) and Case No. 230 (Citizens' declaratory judgment action), as well as Case No. 220 (Normandy's second petition for judicial review), it is evident that Citizens intended to oppose the position taken by Normandy in its petition for judicial review filed in Case No. 866, and that, if given timely notification of the right to respond, would have filed a timely notice of participation in Case No. 866. Therefore, we overrule the Commission's exception.

Second, the Commission excepts to the hearing judge's finding that Ms. Gray had a good faith basis to believe that the January 8, 2014 hearing was an *ex parte* meeting

between the circuit court, the Board, and Normandy. The Commission contends that Ms. Gray could not have had a good faith belief that the hearing was an *ex parte* meeting because the facts do not support such a belief. We overrule the Commission's exception. As explained above, the hearing judge's finding that Ms. Gray and her clients were entitled to notice of, and the ability to participate in, the January 8, 2014 hearing was not clearly erroneous. Moreover, at the January 8, 2014 hearing, Normandy's counsel discussed the four cases—Case No. 866, Case No. 213, Case No. 220, and Case No. 230—with the circuit court, and Normandy's and the Board's counsel recommended consolidation of the cases. Normandy's counsel discussed with the circuit court the sequential order in which the outstanding motions in the cases should be addressed. Although the circuit court did not decide the Board's motion to dismiss at the hearing, the circuit court and Normandy's and the Board's counsel discussed matters pertaining to all four cases and the circuit court issued an order consolidating the cases after the hearing. Certainly, Ms. Gray should have been afforded notice of the hearing and an opportunity to be present. Under the circumstances above, the hearing judge's finding that Ms. Gray had a good faith belief that the hearing had been an *ex parte* meeting between the circuit court, the Board, and Normandy was not clearly erroneous.

Third, the Commission excepts to the hearing judge's failure to find that Citizens received timely service of a copy of the motion to consolidate and that Citizens did not oppose the consolidation. The Commission contends that Ms. Gray testified at deposition that she received a service copy of the motion to consolidate and that she did not file an opposition to the motion to consolidate. The Commission is correct, and we sustain the

exception. However, we note that whether Citizens received timely service of the motion to consolidate and failed to oppose the consolidation is not determinative of whether Mr. Dyer or Ms. Gray engaged in misconduct in this case.

At deposition during the attorney discipline proceeding, Ms. Gray indeed testified that she received "a service copy" of the motion to consolidate and that Citizens did not file an opposition in response to the motion to consolidate. Contrary to the Commission's assertion—that, following the entry of the consolidation order, Ms. Gray filed numerous papers in the circuit court and appellate courts to reverse or modify an order granting a motion that Ms. Gray timely received and did not oppose—Ms. Gray's filings after she discovered the consolidation order had been entered indicate that Ms. Gray did not take issue with the consolidation *per se*. Rather, Ms. Gray's objection was that, in consolidating the cases under Case No. 866, the three underlying individual cases had been closed. In a reply filed on March 4, 2014, Ms. Gray specifically stated that she "believe[d] these cases should be consolidated . . . , but the underlying cases cannot be closed or lose their individual identity." From Ms. Gray's perspective, she was not simply filing papers to reverse or modify the granting of a motion to consolidate that she did not oppose despite having the opportunity to do so. Instead, as the hearing judge's findings demonstrate, Ms. Gray did not oppose consolidation, but rather she opposed the effect of the consolidation as reflected by the circuit court's docket, i.e., the closing of the three underlying cases.

Although Ms. Gray did not oppose consolidation, she apparently believed that closure of the individual cases was an error that potentially disadvantaged her clients. This viewpoint was based, in part, upon the circuit court telling Ms. Gray that there was a

"mistake in the record" and that it was going to be "correct[ed]." Despite the circuit court's oral advice, prior to Ms. Gray filing the first appeal, the alleged mistake had not been corrected. And, it appears that both the circuit court and Ms. Gray were confused as to the appropriate docket entries to be made upon the consolidation of cases and as to whether the individual cases should be closed.[17] Thus, although Citizens received a timely service copy of the motion to consolidate and did not oppose the consolidation, Ms. Gray's receipt of the motion to consolidate is not dispositive of the charged violations of the MLRPC.

Fourth, the Commission excepts to the hearing judge's alleged failure to make findings of material facts concerning the first round of appellate filings, specifically, that, in the first petitions for writs of certiorari, Ms. Gray asked this Court to review Citizens' judicial review case and declaratory judgment cases, when, according to the Commission, the petitions for a writ of certiorari were not permitted by law, and Ms. Gray had represented that the circuit court had fully adjudicated all claims. The Commission points out that this Court ultimately dismissed the petitions for writs of certiorari for lack of appellate jurisdiction because the circuit court had not entered final judgment and no appealable interlocutory judgment or collateral order had been issued.

We overrule the Commission's exception. The record reflects that the hearing judge made numerous findings of fact with respect to the first round of appellate filings, including

_____

[17] It may well have been the practice of the Clerk's Office for the circuit court to make docket entries marking individual cases closed or inactive upon their consolidation. Ms. Gray, however, believed this to be an error or an indication that the individual cases would not proceed. At a minimum, the circuit court did not disabuse Ms. Gray of this belief.

that Ms. Gray stated in her first two petitions for a writ of certiorari that the circuit court had adjudicated all claims in the action in their entirety. Thus, we turn to the second aspect of the Commission's exception: that the hearing judge failed to find that the first round of appellate filings was not supported by fact or law. Contrary to the theory underlying the Commission's exception, the hearing judge found that Ms. Gray had a reasonable belief for stating in the petitions for a writ of certiorari that the circuit court had adjudicated all claims in Case No. 213 (Citizens' judicial review case) and Case No. 230 (Citizens' declaratory judgment action). According to the hearing judge, Ms. Gray's belief stemmed from the circumstance that the docket continued to show that the underlying cases had been closed, and that the circuit court had indicated that the mistake would be corrected but that the circuit court had denied a motion to alter or amend. Thus, we conclude that the hearing judge was not clearly erroneous when he declined to adopt Bar Counsel's suggested finding—that the first and second rounds of appellate findings were unsupported by fact or law.

Fifth, the Commission excepts to the hearing judge's failure to find that the second round of appellate filings—i.e., the April 1, 2014 notice of appeal to the Court of Special Appeals and the April 2, 2014 petition for a writ of certiorari seeking review of the circuit court's order postponing the April 1, 2014 hearing on the judicial review matters and indicating that the circuit court retained jurisdiction of the case—was not supported by fact or law. We overrule the Commission's exception. Again, the Commission takes no issue with the hearing judge's findings of fact related to the second round of appellate filings, and instead excepts to the hearing judge's failure to find, "without any explanation or

analysis," that the second round of appellate findings were unsupported by law. The record demonstrates that the hearing judge noted that, in filing the petition for a writ of certiorari on April 2, 2014, Ms. Gray specifically advised this Court of Citizens' "unprecedented request" to ask that this Court take jurisdiction in Case No. 866 "even though there ha[d] been no final judgment in th[e] matter." In other words, Ms. Gray readily acknowledged that the petition for a writ of certiorari was unusual in that there was not a final judgment in the case, but that, because in Ms. Gray's view, the petition raised issues that were of significance, the grant of certiorari would be appropriate.

In contentious cases involving complex and time-sensitive matters, such as election laws, lawyers may be more likely to file appeals quickly. However, not every lawyer who files an appeal or a petition for a writ of certiorari that is dismissed is charged with violating the MLRPC. Indeed, a lawyer who files appellate papers that are dismissed simply because the lawyer is wrong about the law or the lawyer has, as the hearing judge found, a good faith basis to believe a certain fact that turns out to be incorrect, is generally not subject to discipline under the MLRPC. This is not a case where a lawyer filed an appeal or petition for a writ of certiorari that was blatantly unsupported by the law or facts of the particular case. Therefore, we conclude that the hearing judge was not clearly erroneous when he declined to adopt Bar Counsel's suggested finding—that the first and second rounds of appellate findings were unsupported by fact or law.

Sixth, the Commission excepts to the hearing judge's failure to make findings of material facts concerning the third round of appellate filings, including the following: (1) that Respondents did not seek relief from the circuit court's May 1, 2014 order; (2) that

there was no basis in the law for the filing of an interlocutory appeal; (3) that, prior to May 6, 2014, Ms. Long had not filed anything in the circuit court related to Case No. 866 and that the petition had no basis in law or fact; (4) that the May 1, 2014 order did not deny the motion to quash discovery and Ms. Long did not file any motion in the circuit court; (5) that the two questions presented in the petition for a writ of certiorari were not supported by fact or law; and (6) that Respondents were attempting to have this Court litigate, in the first instance, the motion for protective order, although the circuit court had not ruled on the motion. The third round of appellate filings concerned Ms. Gray's attempt to seek appellate review of the circuit court's April 30, 2014 staying of discovery and the declaratory judgment action. In the petition for a writ of certiorari filed in the third round of appellate filings, Respondents argued that the circuit court's rulings were final as to the two of the nonparty circulators, Ms. Wasserman and Ms. Long, and that an interlocutory appeal was appropriate.

We overrule the Commission's exception. Again, the Commission does not except to the findings of fact that the hearing judge made with respect to the third round of appellate filings, but rather contends that the hearing judge failed to make specific findings of fact. The hearing judge heard testimony in the attorney discipline proceeding and set forth detailed findings of fact relevant to the third round of appellate filings. We observe that, with respect to both the second and third round of appellate filings, the hearing judge specifically found that neither this Court nor the Court of Special Appeals raised any issue that Mr. Dyer or Ms. Gray acted in bad faith or without substantial justification. Nor did Mr. Erskine, the complaining party in these disciplinary proceedings, seek sanctions for

- 64 -

the filings related to the third round of appellate filings. Essentially, the Commission asks this Court to find clearly erroneous that the hearing judge did not make certain findings of fact with respect to the third round of appellate filings where the hearing judge concluded as to those filings that neither the appellate courts nor opposing counsel raised any issue as to misconduct on Respondents' part. We decline to do so.

Seventh, the Commission excepts to the hearing judge's failure to find that the fifth round of appellate filings was not supported by fact or law. The record reflects that the hearing judge made, in pertinent part, the following findings of fact with respect to the fifth round of appellate filings: On June 30, 2014, after Mr. Erskine had scheduled depositions and served subpoenas on the plaintiffs and approximately thirty petition circulators, Respondents filed a notice of interlocutory appeal and request for expedited review on behalf of the plaintiffs and two of the nonparty circulators, Ms. Wasserman and Ms. Long. In response, Normandy filed a motion to dismiss the appeal for a lack of appellate jurisdiction; and Respondents opposed the motion to dismiss. On August 6, 2014, the Court of Special Appeals issued an order dismissing the interlocutory discovery appeal, stating that the appeal was not allowed by law. In the meantime, on July 14, 2014, Respondents filed in this Court an "Emergency Petition for Direct Appeal Writ of Certiorari, Ancillary Injunctive Relief and Expedited Review," in which they stated that the circuit court had "adjudicated all claims in each of the underlying cases appealed in their entirety, however, on June 17, 2014, the [circuit] court denied [their] motion for *res judicata*." Normandy filed an answer to the emergency petition. This Court denied the emergency petition. As explained above, that Respondents filed an appeal and a petition

for a writ of certiorari that were dismissed and denied, respectively, is not alone dispositive of whether they violated the MLRPC, even if Respondents were mistaken as to the law or the ability to pursue the appeal. Therefore, we overrule the Commission's exception.

Eighth, the Commission excepts to the hearing judge's failure to find that the final round of appellate filings was not supported by fact or law. The final round of appellate filings concerned Respondents': (1) petitions for a writ of certiorari seeking review of: (a) the circuit court's orders denying a motion for protective order and granting a motion to compel; (b) the Court of Special Appeals' dismissal of Case No. 2091; and (c) the Court of Special Appeals' unreported opinion in Case No. 1627; and (2) Respondents' notices of appeal to the Court of Special Appeals concerning: (a) the circuit court's imposition of sanctions and the circuit court's discovery rulings; and (b) the circuit court's order dismissing the declaratory judgment action. The Court of Special Appeals issued an order dismissing Case No. 2091 and issued an unreported opinion dismissing the appeal filed in Case No. 1627, and this Court entered orders denying the petitions for a writ of certiorari.

The Commission contends that undisputed facts demonstrate that Respondents' filings contained arguments that had previously been presented, or had not been preserved for appeal. We overrule the Commission's exception. The Commission takes no issue with the findings of fact that the hearing judge made with respect to the final round of appellate filings, and indeed, states that the hearing judge "correctly found" the facts as stated in the hearing judge's opinion. The Commission's exception appears to be limited to the hearing judge's decision not to accept its suggested finding that the final round of appellate filings was not supported by law. The hearing judge found that, after the circuit

court awarded sanctions against them, Respondents noted an appeal to the Court of Special Appeals, and that, after the circuit court dismissed the declaratory judgment action, Respondents noted another appeal to the Court of Special Appeals. The hearing judge found that two separate cases were opened in the Court of Special Appeals, Case No. 1627 and Case No. 2091; ultimately, the Court of Special Appeals dismissed Case No. 2091 for Respondents' failure to file an appellants' brief and issued an unreported opinion dismissing Case No. 1627, concluding that the challenges to the circuit court's discovery orders were moot and that Citizens lacked standing to challenge the sanctions imposed against Respondents. Respondents filed a petition for a writ of certiorari as to the dismissal of Case No. 2091 and the unreported opinion issued in Case No. 1627; this Court denied certiorari. Put simply, that the hearing judge declined to draw the conclusion that the Commission urged does not mean that the hearing judge's failure to do so was clearly erroneous. Further, consistent with our discussion of the first, second, third, and fifth rounds of appellate filings, we observe that had the hearing judge found the final round of appellate filings to be without basis in fact or law, so long as it was not frivolous, this finding alone would not necessarily support a finding that Respondents had violated the MLRPC.

Ninth, the Commission excepts to the hearing judge's findings concerning the discovery issues in the declaratory judgment action. Specifically, the Commission contends that the hearing judge erred in failing to find that, prior to June 27, 2014, Respondents had not advised their clients that the depositions had been scheduled for July 8, 2014. According to the Commission, there is no evidence that Mr. Dyer or Ms. Gray

advised their clients of the deposition dates or that any of the parties were aware that their depositions had been scheduled prior to June 27, 2014. The Commission argues that the hearing judge erred in failing to find that, contrary to the circuit court's June 17, 2014 order, Ms. Gray did not turn responsive documents in her possession over to Normandy. The Commission asserts that the hearing judge erred in finding that Respondents explained to their clients the nature of the sanctions they could face if they did not attend the depositions. The Commission maintains that the hearing judge erred in failing to find that Respondents advised their clients, both the parties and nonparty petition circulators, not to appear for the scheduled depositions in violation of the circuit court's June 17, 2014 order and the Maryland Rules. The Commission contends that the hearing judge erred in failing to find that Respondents did not convey to their clients Normandy's offer to attend a rescheduled deposition and avoid the filing of a motion for a writ of body attachment. According to the Commission, "There is no affirmative evidence that the Respondents conveyed the offer."

We overrule the Commission's exception. The Commission attempts to supplement the hearing judge's findings of fact concerning discovery so that the findings of fact align with the Commission's view. Significantly, the Commission does not except to any of the findings of fact that the hearing judge actually made related to discovery. For example, the hearing judge found that, on June 20, 2014, Mr. Erskine emailed all counsel and advised of his intention to take video depositions of the parties on July 8, 2014, and of twenty-five petition circulators on July 9 and 10, 2014; on June 24, 2014, after receiving no response of any scheduling conflicts, Normandy issued notices of depositions to the parties for July 8, 2014; between June 23 and 26, 2014, Mr. Erskine and his staff prepared and served

subpoenas directed to the individual parties and to approximately thirty petition circulators; on June 27, Respondents advised their clients that depositions had been scheduled for July 8, 2014; and, Respondents "informed their clients of the depositions and correctly informed them of their rights with respect to attending." Essentially, the Commission contends that the hearing judge failed to make findings that would be inconsistent with the facts that the hearing judge determined. It is within the province "of the hearing judge to credit or discredit evidence, including testimony, and resolve conflicting versions of events. As such, we must give due regard to the opportunity of the hearing judge to assess the credibility of witnesses." *Attorney Grievance Comm'n v. Landeo*, 446 Md. 294, 320-21, (2016) (citation omitted).

Tenth, the Commission excepts to the hearing judge's failure to find that Respondents made statements with reckless disregard as to their truth or falsity concerning the qualifications or integrity of judges and the Clerk of the circuit court. We overrule the Commission's exception. As an initial matter, we note that in the findings of fact the hearing judge set forth statements made by Respondents, including the full text of the editorial published by the *Baltimore Sun*, as well as a quotation attributed to Ms. Gray. That the hearing judge did not make a finding of fact that Respondents made statements with reckless disregard as to their truth or falsity concerning the integrity of the circuit court and Clerk is consistent with the hearing judge's conclusion that Respondents did not violate MLRPC 8.2(a) (Judicial and Legal Officers). Specifically, in concluding that there was not clear and convincing evidence that Respondents violated MLRPC 8.2(a), the hearing judge explained that none of the "criticisms of the admittedly mishandled case

- 69 -

amount to false statements" and that, "[a]t no time did the Respondents criticize a judge, or any other officer of the Court with either knowledge of or a reckless disregard for the truth." And, as to the *Baltimore Sun* article, the hearing judge concluded that, although the editorial was critical of Mr. Erskine, it did not "contain a false statement as to the qualifications of a judge, legal officer, []or any candidate." As to Ms. Gray's alleged statement concerning the Court of Special Appeals—"Unreported opinions are the way the appellate courts do their political dirty work . . . that tells you a lot."—the hearing judge found that there was not clear and convincing evidence to "prove what was said, but only what was printed."

Eleventh, the Commission excepts to the hearing judge's "non-material findings" in which the hearing judge allegedly "demonstrated animus toward the [Commission] and its counsel at trial." The Commission asserts that it excepts to such statements because the hearing judge's statements concerning Bar Counsel "leave[s] the impression that the disciplinary case itself was unfair to Respondents and that specific actions of counsel were 'unfounded,' 'biased,' 'unreasonable,' 'frivolous,' 'unwarranted,' and 'lacking in objectivity.'" The Commission also excepts to the "attacks on Mr. Erskine," who, as the complainant, "acted in the best traditions of the Bar" and "chose to honor his commitment as an attorney to report misconduct."

We overrule the Commission's exception. The "findings" to which the Commission directs this Court's attention appear in the introductory discussion section to the hearing judge's conclusions of law and in the hearing judge's conclusions of law. These statements are a part of the hearing judge's analysis in connection with the conclusions of law, and

are not set forth as findings of fact and, as such, have not been summarized above by this Court. Nor have the alleged findings been relied upon by this Court in sustaining or overruling any of the Commission's exceptions.

Finally, the Commission excepts to the hearing judge's failure to make findings concerning aggravating factors, namely, bad faith obstruction of the attorney discipline proceeding and submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding. We overrule the Commission's exception. In an attorney discipline proceeding, the "deference accorded to the hearing judge's findings is appropriate, in part, because the fact finder is in the best position to assess the demeanor-based credibility of witnesses" and "[t]he hearing judge is permitted to pick and choose which evidence to rely upon from a conflicting array when determining findings of fact." *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50 (2006) (citations and internal quotation marks omitted). Furthermore, "[i]n determining an appropriate sanction for a lawyer's misconduct, this Court considers . . . aggravating factors and/or mitigating factors." *Landeo*, 446 Md. at 345 (quoting *Attorney Grievance Comm'n v. Shuler*, 443 Md. 494, 506 (2015)). Here, given that the hearing judge concluded that neither Mr. Dyer nor Ms. Gray engaged in misconduct, and because with the exception of a violation of MLRPC 8.1(b) with respect to Mr. Dyer, this Court agrees with the hearing judge, we conclude that it was not necessary for the hearing judge to make findings of fact relevant to aggravating factors.

In sum, we sustain the Commission's third exception to the hearing judge's findings of fact as to Ms. Gray's receipt of a copy of the Board's motion to consolidate, but

otherwise overrule the remainder of the Commission's exceptions to the hearing judge's findings of fact. The procedural history of the underlying cases was dense and complex, and the litigation itself was highly contentious. The hearing judge made detailed findings of fact based on the evidence presented to him over the course of sixteen days. The record in this attorney discipline case is voluminous, and the hearing judge more than adequately parsed through it in making the findings of fact. That the hearing judge may not have made certain findings of fact urged by the Commission does not render the findings of fact that were made clearly erroneous.

## B.    *Conclusions of Law*

Respondents do not except to the hearing judge's recommended conclusions of law. Conversely, the Commission excepts to the hearing judge's failure to find that Respondents violated the MLRPC, namely, 1.1, 1.3, 1.4, 3.1, 3.2, 3.4, 4.4, 8.1, 8.2, 8.4(c), 8.4(d), and 8.4(a). For the following reasons, we (1) sustain the Commission's exception to the hearing judge's conclusion that Mr. Dyer did not violate MLRPC 8.1(b); (2) sustain the Commission's exception to the hearing judge's conclusion that Mr. Dyer did not violate MLRPC 8.4(a); (3) overrule the Commission's remaining exceptions to the hearing judge's conclusions of law; and (4) uphold the rest of the hearing judge's conclusions of law.

*MLRPC 1.1 (Competence)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 1.1. The Commission contends that Respondents violated MLRPC 1.1 by, among other things, filing notices of appeal and petitions for a writ of certiorari that were not permitted by law or preserved for appellate review, continually arguing that the

consolidation order closed three of the cases and that the circuit court engaged in an *ex parte* meeting even though such arguments were allegedly not supported by law or facts, failing to file responses to Normandy's two motions for sanctions filed in the circuit court, and failing to take any action on behalf of the nonparty petition circulators whom they represented such that the circuit court could have ruled on the June 2014 subpoenas issued by Normandy. The Commission argues that Respondents engaged in a series of mistakes and omissions that, taken together, constitute a violation of MLRPC 1.1. We overrule the exception.

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1. Comment [1] to MLRPC 1.1 provided, in pertinent part,

> In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, [and] the preparation and study the lawyer is able to give the matter[.]

Furthermore, Preamble [19] of the MLRPC stated, in pertinent part:

> The [MLRPC] presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation.

Here, the hearing judge was correct in concluding that there was not clear and convincing evidence that Respondents violated MLRPC 1.1. Examining Respondents' conduct and given the complexity and contentious nature of the underlying litigation, we

conclude that, although Respondents did not provide perfect representation, their representation of Citizens was competent. We note, as an initial matter, that filing an ultimately unsuccessful lawsuit, motion, or other pleading does not mean that a lawyer is incompetent or otherwise lacking in the legal knowledge, skill, thoroughness, and preparation necessary for competent representation.

In this case, Respondents sought to protect their clients' rights and interests, by correcting what they considered to be the closure of their clients' cases and erroneous rulings by the circuit court. As discussed above, the hearing judge found that Respondents had a good faith basis for their belief with respect to the consolidation order and the closing of the three underlying cases, and the lack of hearing notice for the January 8, 2014 hearing. As to discovery and the scheduled depositions, there is not clear and convincing evidence that Respondents advised their clients and the nonparty circulators not to attend depositions. Rather, the hearing judge found that Respondents advised their clients and the nonparty circulators of the consequences that could occur as a result of not attending depositions. Ultimately, the record supports the conclusion that it was the clients' and nonparty circulators' decision to not attend depositions.

Notably, we observe that this case is not one of omission; the Commission does not allege that Respondents failed to take necessary steps on their clients' behalves, or made blatant mistakes. Rather, the record demonstrates that Respondents attended all hearings, with the exception of the January 8, 2014 hearing, for which they did not receive notice; provided adequate representation at those hearings; filed motions, pleadings, papers, appeals, and petitions for a writ of certiorari to remedy what they believed to be erroneous

- 74 -

circuit court rulings and to protect their clients' interests and advance the cases; and communicated regularly with their clients. Significantly, none of Respondents' clients complained about the representation they received or raised any issue with respect to Respondents' conduct in the underlying litigation. Whether Respondents were actually correct in their interpretation of the law and facts is not solely dispositive of a determination as to whether Respondents violated MLRPC 1.1. That a lawyer may file a motion or pleading that ultimately proves to be unsuccessful or even lack merit is not *per se* a violation of MLRPC 1.1. Here, none of Respondents' clients were injured as a result of their representation through any omission on Respondents' part or through Respondents taking an incorrect action on their clients' behalves. *Cf. Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 267 (2016) (concluding that lawyer violated MLRPC 1.1 by, in one matter, "repeatedly fail[ing] to file a brief and appendix in [a client]'s appeal, even after being granted an extension," and, in another matter, "fail[ing] to identify the proper type of visa for which [a client] and his family might qualify, instead advising [the client] to obtain a[ specific] visa, for which [the client] was ineligible"); *Attorney Grievance Comm'n v. Haley*, 443 Md. 657, 668 (2015) (concluding that lawyer violated MLRPC 1.1 by, among other things, in one matter, "fail[ing] to prepare and submit any pleadings or take any action in furtherance of [a client]'s case," and, in another matter, "includ[ing] a certificate of service with an incorrect address for [the client]'s ex-wife" and "fail[ing] to include with [a] motion a domestic case information report").

This case illustrates the fine line between an alleged lack of competency and zealous representation of one's clients. This Court must determine when zealous representation

crosses a line and constitutes sanctionable misconduct calling into question a lawyer's competency. In doing so, we must strike a balance between chilling a lawyer's ability to represent his or her clients and preserving the integrity of the MLRPC and MLRPC 1.1 specifically. We start with the principle that not all overzealous representation is necessarily incompetent representation. In this case, under all of the circumstances, we decline to conclude that Respondents' representation, which was certainly zealous, and, indeed, at times, overzealous, evidenced a lack of competency. Thus, we determine that the hearing judge was correct in concluding that there is not clear and convincing evidence that Respondents failed to provide competent representation to their clients.

### MLRPC 1.3 (Diligence)

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 1.3. The Commission contends that Respondents "demonstrated a complete lack of diligence in educating themselves about the rules of civil procedure in the circuit and appellate courts." We overrule the exception.

"A lawyer shall act with reasonable diligence and promptness in representing a client." MLRPC 1.3.

Here, the hearing judge was correct in concluding that there was not clear and convincing evidence that Respondents violated MLRPC 1.3. The record does not demonstrate that Respondents failed to act with promptness and diligence in representing their clients. Respondents sought to expeditiously move the underlying litigation forward so that a referendum question concerning the Council's enactment of an ordinance adopting the 2013 Comprehensive Zoning Plan could be placed on the November 2014 ballot. There

is not clear and convincing evidence that Respondents were less than diligent in representing their clients. Indeed, none of their clients filed complaints with Bar Counsel or testified in the disciplinary proceeding that they were dissatisfied with Respondents' representation or that Respondents failed to promptly pursue the underlying litigation.

As to the Commission's contention that Respondents were not diligent with respect to learning the rules of civil and appellate procedure, we conclude that, although Respondents did not succeed in either this Court or the Court of Special Appeals, they did not demonstrate a failure to diligently pursue the matter on their clients' behalves. As Comment [1] to MLRPC 1.3 provided, "A lawyer must [] act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Certainly, Respondents did not exhibit a lack of care and attention to the underlying litigation or neglect the case.

*MLRPC 1.4(a)(1), 1.4(a)(2), and 1.4(b) (Communication)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 1.4(a)(1), 1.4(a)(2), and 1.4(b). The Commission contends that, should this Court sustain its ninth exception to the findings of fact, the facts would support a conclusion that Respondents violated both MLRPC 1.4(a) and 1.4(b) by failing to communicate with the parties about the proposed dates for depositions in June and July 2014, failing to communicate with Ms. Markovitz as to rescheduling her deposition, and failing to advise their clients that they could be subject to body attachments if they failed to appear for their duly noted depositions. We overrule the exception.

MLRPC 1.4 provided, in pertinent part,

(a)A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules; [and]

(2) keep the client reasonably informed about the status of the matter[.]

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Comment [5] to MLRPC 1.4 explained that "[t]he client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued . . . . Adequacy of communication depends in part on the kind of advice or assistance that is involved."

Here, the hearing judge was correct in concluding that there was not clear and convincing evidence that Respondents violated MLRPC 1.4. As discussed above, we overruled the Commission's ninth exception concerning the discovery issues in the declaratory judgment action. Significantly, none of Respondents' clients complained about a lack of communication or deficient communication. Indeed, the record demonstrates that Respondents consistently kept their clients informed about the status of the underlying litigation, including holding a group meeting with their clients and other nonparty circulators, including those who were not their clients, to discuss the depositions scheduled by Mr. Erskine. At that meeting, Respondents advised the clients and nonparty circulators about the types of sanctions that might occur as a result of not attending depositions, and although they advised that they believed the subpoenas violated the nonparty circulators'

First Amendment rights, they also advised that the nonparty circulators should either comply with the subpoena or seek counsel.

Thus, there is not clear and convincing evidence that Respondents advised their clients and nonparty circulators to not attend the depositions. The record reflects that, ultimately, Respondents' clients made their own decisions as to whether to attend the scheduled depositions after receiving advice from counsel. Similarly, there is not clear and convincing evidence that Respondents failed to advise their clients of Mr. Erskine's "offer," made by email on July 10, 2014, to compromise on seeking writs of body attachment against each nonparty circulator who had failed to appear at their scheduled depositions if those nonparty circulators contacted Mr. Erskine to reschedule.

As to Respondents' communication with Ms. Markovitz regarding the deposition, notably, Ms. Markovitz has not complained about any communication or lack thereof between herself and Respondents. The record demonstrates that Respondents notified Ms. Markovitz of the scheduled deposition, and that, due to her scheduling conflict and time constraints, Ms. Markovitz sought the assistance of another lawyer, Mr. Holzer, in contacting Mr. Erskine about the conflict. Indeed, Ms. Markovitz testified before the hearing judge that she was "not displeased" with Respondents' representation and that it was rare for lawyers in Howard County to represent citizens in controversial zoning cases. Thus, there is not clear and convincing evidence that Respondents failed to inform Ms. Markovitz or any other client of circumstances related to their cases.

*MLRPC 1.16(a)(1) (Declining or Terminating Representation)*

MLRPC 1.16(a)(1) provided, "Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: [] the representation will result in violation of the [MLRPC] or other law[.]" (Paragraph break omitted.)

The Commission does not except to the hearing judge's conclusion that there was not clear and convincing evidence that Respondents violated MLRPC 1.16(a)(1). Moreover, the record is devoid of any evidence that either Mr. Dyer or Ms. Gray was required to withdraw from representing Citizens. According to the hearing judge, during the underlying litigation, Mr. Erskine requested that the circuit court permit him to call Ms. Gray, who had been a petition circulator, as a witness, but the circuit court denied the request. Absent this request, which was denied, there is no reason why Ms. Gray, who had participated in some capacity as a petition circulator, would have been ineligible to serve as counsel for Citizens, where there was no expectation or indication that Ms. Gray would be a necessary witness and where Ms. Gray did not, in actuality, testify as a witness. Therefore, we agree with the hearing judge's conclusion that there was not clear and convincing evidence that Respondents violated MLRPC 1.16(a)(1).

*MLRPC 3.1 (Meritorious Claims and Contentions)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 3.1. The Commission contends that Respondents continually argued that the consolidation order closed three cases, and that all filings related to that argument were frivolous and not supported by law or fact. The Commission argues that all of

Respondents' appellate filings, with the exception of the appeal on the merits of the judicial review cases, were frivolous and not supported by law. We overrule the exception.

MLRPC 3.1 provided,

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

Here, the hearing judge was correct in concluding that there was not clear and convincing evidence that Respondents violated MLRPC 3.1. With respect to the appellate filings, as discussed in detail above, we overrule the Commission's exceptions to the hearing judge declining to find that various rounds of appellate filings were not supported by fact or law. And, as explained, that an appellate filing may ultimately be unsuccessful, and indeed even dismissed, does not mean that a lawyer violates MLRPC 3.1 for making such a filing. Additionally, we note that there is no indication in the record that this Court or the Court of Special Appeals ever awarded sanctions against Respondents in connection with any of the appellate filings, even though Normandy had asked the Court of Special Appeals to do so.

As to arguments concerning the consolidation order, there is not clear and convincing evidence that Respondents lacked a basis for filings in which they argued that the circuit court closed the three cases other than Case No. 866. For example, in the first round of appellate filings, the hearing judge found that Ms. Gray had a reasonable belief for stating in the petitions for a writ of certiorari that the circuit court had adjudicated all

claims in Case No. 213 and Case No. 230, given that the docket continued to show that the cases had been closed, rather than consolidated. Indeed, on February 19, 2014, at a status conference in the circuit court, Ms. Gray explained her concerns about the consolidation order and the fact that the docket reflected that the cases were closed and that she had been told by the Clerk's Office that the cases were closed. The circuit court agreed that it could "clear up the docket if that's a problem." At the March 12, 2014 motions hearing, the circuit court again acknowledged that "[t]here may be some issue of the effect of the consolidation," and that "[t]here [wa]s a mistake in the record" that it was "going to correct." Because the docket continued to show that the cases were closed, the hearing judge found that Respondents' filings related to the effect of the consolidation order were not frivolous as the Commission contends. We agree with the hearing judge's conclusion.

*MLRPC 3.2 (Expediting Litigation)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 3.2. The Commission contends that Respondents violated MRPC 3.2 by pursuing unwarranted motions and appeals. We overrule the exception.

"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." MLRPC 3.2. "An attorney violates [MLRPC 3.2] by delaying to take fundamental litigation steps in pursuit of the client's interest." *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 226 (2012).

Here, the hearing judge was correct in concluding that there was not clear and convincing evidence that Respondents violated MLRPC 3.2. The record reflects that Respondents did not delay in taking action on their clients' behalves nor did they otherwise

attempt to slow down litigation to the detriment of their clients or the opposing parties. Respondents were seeking, on their clients' behalves, to have the zoning issue placed on the November 2014 ballot. The record demonstrates that, despite filing unsuccessful motions and appeals, Respondents were not attempting to delay the litigation, and, in actuality, did not unreasonably delay proceedings in the underlying case.

*MLRPC 3.4(a), 3.4(c), and 3.4(d) (Fairness to Opposing Party and Counsel)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 3.4(a), 3.4(c), and 3.4(d). The Commission contends that Respondents violated MLRPC 3.4 by obstructing Normandy's access to evidence—testimony and documentation—by, namely, advising their clients to not attend scheduled depositions. The Commission argues that Respondents failed to comply with Normandy's proper discovery requests and that they concealed documentation that had evidentiary or potential evidentiary value. We overrule the exception.

MLRPC 3.4 provided, in relevant part,

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

. . .

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent efforts to comply with a legally proper discovery request by an opposing party[.]

For example, this Court has held that a lawyer violates MLRPC 3.4(c) when he or she "repeatedly fail[s] to appear in court and to produce documents as directed by court order." *Attorney Grievance Comm'n v. Mininsohn*, 380 Md. 536, 570 (2004).

Here, the hearing judge was correct in concluding that there was not clear and convincing evidence that Respondents violated MLRPC 3.4. There is simply no evidence that Respondents obstructed Normandy's access to evidence, that they failed to comply with proper discovery requests, or that they concealed documentation having potential evidentiary value. The record demonstrates that Respondents advised their clients and the nonparty petition circulators about the subpoenas, their belief that the subpoenas violated the parties' and nonparty petition circulators' First Amendment rights, and the potential sanctions that could occur as a result of not attending depositions. Ultimately, however, Respondents' clients and the nonparty petition circulators made their own independent decisions as to whether or not to attend the depositions. Thus, that Respondents advised their clients and the nonparty petition circulators that attending the depositions could result in the relinquishment of their First Amendment rights did not unlawfully obstruct Normandy's access to evidence.

The record demonstrates that Respondents consistently opposed the scope of Normandy's discovery requests; indeed, the hearing judge characterized the document request accompanying the initial subpoenas and deposition notices as "extremely broad and outside of the scope outlined in Normandy's Counterclaim." Notably, this case does not involve a complete failure of discovery or non-responsiveness on the part of Respondents. Rather, it is evident that Respondents had concerns about discovery and their

clients' obligation to submit to such discovery, that they moved for a protective order in the circuit court and were not otherwise knowingly disobeying discovery requests, and that they attempted to provide legal advice with respect to discovery, including their concerns about the First Amendment rights of their clients and nonparty petition circulators. This is not a case where Respondents intentionally sought to obstruct Normandy's access to evidence or failed to make reasonably diligent efforts to comply with legally proper discovery requests. Finally, there is no evidence that Respondents concealed documents that had potential evidentiary value by, for example, destroying documents or hiding documents.

*MLRPC 3.7(a) (Lawyer as Witness)*

MLRPC 3.7(a) provided,

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

> (1) the testimony relates to an uncontested issue;

> (2) the testimony relates to the nature and value of legal services rendered in the case; or

> (3) disqualification of the lawyer would work substantial hardship on the client.

The Commission does not except to the hearing judge's conclusion that there was not clear and convincing evidence that Respondents violated MLRPC 3.7. Moreover, the record does not contain clear and convincing evidence that either Mr. Dyer or Ms. Gray acted as an advocate in a case in which they were likely to be necessary witnesses. There is no evidence that Respondents, having served as petition circulators, and, in Ms. Gray's

case, as a petition circulator organizer and trainer, were likely to be necessary witnesses such that they were not permitted to serve as lawyers for Citizens or that they in any way impermissibly combined their roles as advocates with that of fact witnesses. Furthermore, as explained above, there is not clear and convincing evidence that Respondents knew or should have known that they were likely to be called as witnesses such that they should not accept representation of Citizens. Although Respondents served as petition circulators, the record reflects that there were numerous, upwards of seventy, petition circulators, any number of whom were available to be called as witnesses. Therefore, we agree with the hearing judge's conclusion that there was not clear and convincing evidence that Respondents violated MLRPC 3.7.

*MLRPC 4.4(a) and 4.4(b) (Respect for Rights of Third Person)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 4.4(a). The Commission contends that Respondents violated MLRPC 4.4(a) by filing "numerous frivolous papers and ma[king] numerous frivolous arguments during the pendency of the referendum litigation." We overrule the exception.

MLRPC 4.4(a) and (b) provided:

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person.

(b) In communicating with third persons, a lawyer representing a client in a matter shall not seek information relating to the matter that the lawyer knows or reasonably should know is protected from disclosure by statute or by an established evidentiary privilege, unless the protection has been waived. The lawyer who receives information that is protected from disclosure shall (1) terminate the communication immediately and (2) give notice of the

- 86 -

disclosure to any tribunal in which the matter is pending and to the person entitled to enforce the protection against disclosure.

Here, the hearing judge was correct in concluding that there was not clear and convincing evidence that Respondents violated MLRPC 4.4(a). The record contains no evidence that Respondents took any action that was intended to embarrass, delay, or burden Mr. Erskine, Normandy, the Board, or any third person. Similarly, there is no evidence whatsoever that Respondents used methods of obtaining evidence that violated the legal rights of any third person.

Similarly, we conclude that there was not clear and convincing evidence that Respondents violated MLRPC 4.4(b). The hearing judge made no conclusion of law with respect to the charged violation of MLRPC 4.4(b), and the Commission has not excepted to the lack of a conclusion that Respondents violated MLRPC 4.4(b). There is no evidence that, in communicating with third persons, either Mr. Dyer or Ms. Gray sought information that they knew or should have known was protected from disclosure.

*MLRPC 8.1(b) (Disciplinary Matters)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 8.1(b). The Commission contends that Respondents failed to respond, with complete and relevant information, to its lawful requests for information. We overrule the exception with respect to Ms. Gray, but sustain the exception with respect to Mr. Dyer.

"[A] lawyer in connection with a disciplinary matter, shall not . . . fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions

- 87 -

or disciplinary authority[.]" MLRPC 8.1(b). This Court has repeatedly held that a lawyer who knowingly fails to respond to Bar Counsel violates MLRPC 8.1(b). *See Garrett*, 427 Md. at 226 ("It goes without saying that [the lawyer]'s failures to respond to Bar Counsel's requests for information in connection with any of the nine investigations constitute nine separate violations of [MLRPC] 8.1."); *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 336 (2013) ("Bar Counsel asked repeatedly [for the lawyer] to respond to the Petition, but he did not. . . . [The lawyer]'s conduct is in violation of MLRPC 8.1(b)."). And, in *Attorney Grievance Commission v. Bridges*, this Court held that a lawyer violated MLRPC 8.1(b) where the lawyer "refused to provide requested information, failed to cooperate with the Inquiry Panel, and destroyed relevant documents." 360 Md. 489, 512 (2000). Significantly, in *Bridges*, the lawyer had not failed to respond to Bar Counsel altogether; rather, the lawyer responded to Bar Counsel's letters "by challenging Bar Counsel's jurisdiction and requesting further information." *Id.* at 513. We explained that, although the initial complaints were directed at the lawyer's employee, the lawyer "was required to provide [] relevant information because M[L]RPC 8.1 mandates that an attorney must respond adequately to the demands of a disciplinary authority concerning his or her employees." *Id.* at 513.

Here, the hearing judge was correct in concluding that there was not clear and convincing evidence that Ms. Gray violated MLRPC 8.1(b); however, clear and convincing evidence persuades us to reverse the hearing judge's conclusion that Mr. Dyer did not violate MLRPC 8.1(b). This case does not involve lawyers who failed to respond altogether to Bar Counsel. Rather, the record demonstrates that both Respondents

responded to Bar Counsel's letters. The distinction is in the manner in which they responded: Ms. Gray responded to the substance of the complaints; Mr. Dyer did not.

Mr. Erskine's complaint letters to Bar Counsel, to which Bar Counsel requested that Respondents respond, included very broad accusations of misconduct to which it may have been difficult to respond. In the face of these broad accusations, although Ms. Gray informed Bar Counsel that she adopted Mr. Dyer's response, Ms. Gray also responded by providing her view of the underlying litigation, explaining to Bar Counsel the contentious nature of the case and that, in her opinion, Mr. Erskine's complaint was an attempt to intimidate her that had begun during the litigation in the circuit court. Although Ms. Gray may not have responded to each of the allegations of misconduct set forth in Mr. Erskine's complaint and although Bar Counsel apparently takes issue with the substance of Ms. Gray's response, we are satisfied that the hearing judge's determination that Ms. Gray did not violate MLRPC 8.1(b) is correct. Given the broad nature of the complaint and that Ms. Gray's response addressed the substance of the complaint and provided her opinion as to events concerning the underlying litigation, there is not clear and convincing evidence that Ms. Gray knowingly failed to respond to a lawful demand for information from Bar Counsel. Rather, Ms. Gray promptly responded to the substance of the allegations by providing her view of the underlying litigation and why she believed Mr. Erskine had filed such a complaint against her in the first instance. As such, we determine that the hearing judge properly concluded that Ms. Gray did not violate MLRPC 8.1(b).

With respect to Mr. Dyer, we observe that, although Mr. Dyer responded to Bar Counsel's letters, in each instance Mr. Dyer failed to respond to the substance of Mr.

Erskine's allegations of misconduct. Instead, Mr. Dyer raised, and continued to raise, issues as to the "legality of Maryland's confidential attorney grievance proceedings," and Bar Counsel's authority to conduct the investigation. Mr. Dyer questioned the authority of Bar Counsel to conduct a "confidential" investigation and, yet, refused to accept Bar Counsel's willingness to treat his letters as a waiver of confidentiality. Essentially, Mr. Dyer objected to Bar Counsel's ability to conduct the investigation in the manner prescribed by the Maryland Rules and refused to respond at all to the substance of the complaints.

Mr. Dyer's failure to respond to the broad accusations of misconduct stated in Mr. Erskine's complaint was not as egregious as the misconduct in *Bridges*. In that case, Bar Counsel made numerous specific requests for documents, and ultimately issued a subpoena, but the lawyer refused to provide the requested documents. *Bridges*, 360 Md. at 512-13. In this case, Bar Counsel only requested a general response to Mr. Erskine's accusations, and did not make specific requests for specific documents or other information, or file a subpoena. Nevertheless, we cannot say that the request for a response was merely *pro forma*. A substantive response from Mr. Dyer would have informed Bar Counsel whether he was contesting some, or all, of the accusations made by Mr. Erskine, and thus would have enabled Bar Counsel to focus its investigation.

Therefore, even though Bar Counsel only requested a general response to Mr. Erskine's allegations, as opposed to a request for specific documents or other information, the request was still "a lawful demand for information" pursuant to MLRPC 8.1(b). Consequently, Mr. Dyer had an obligation to make a substantive response to that request.

But, instead of doing so, he responded by raising constitutional objections to the confidential nature of the Commission proceedings. Such objections, much like the lawyer's jurisdictional challenges in *Bridges*, did not adequately respond to Bar Counsel's demands. Nothing prevented Mr. Dyer from stating and preserving his constitutional objection to the Commission's process while still providing Bar Counsel with his basic position on the allegations against him—indeed, this is precisely what Ms. Gray did in her separate response. Accordingly, we conclude that clear and convincing evidence establishes that Mr. Dyer violated MLRPC 8.1(b).

*MLRPC 8.2(a) (Judicial and Legal Officials)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 8.2(a). The Commission contends that Respondents violated MLRPC 8.2(a) by making statements, with reckless disregard as to their truth or falsity, concerning the qualifications or integrity of various circuit court judges, the clerk of the circuit court, and the Chief Judge of the Court of Special Appeals. The Commission argues that Respondents did not have a reasonable or demonstrable basis for making such statements. We overrule the exception.

MLRPC 8.2(a) provided:

A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

Here, the hearing judge was correct in concluding that there is not clear and convincing evidence that Respondents violated MLRPC 8.2(a). Certainly, Respondents

were critical of the circuit court and the clerk. For example, in a letter to the Administrative Judge and circuit court judge upon learning of the January 8, 2014 hearing and consolidation of the cases, Ms. Gray wrote "to express serious reservation as to whether [her] clients c[ould] obtain fair treatment and an unbiased decision in the two referendum related cases," and stated that the January 8, 2014 hearing "appear[ed] to be little more than an ex parte meeting between a Judge and counsel representing parties opposing the referendum." Also, in the petition for a writ of certiorari filed on April 2, 2014, Ms. Gray stated that the circuit court, instead of granting the Board's motion to dismiss, "apparently, to protect referendum opponents from dismissal, . . . after a 'secret' hearing . . . and without notice to the undersigned, closed three of the four referendum related cases and supposedly 'amalgamated' or consolidated all cases under [Case No.] 866."

Respondents' statements were based on the circumstances of the underlying litigation, and their assessment that the consolidation of the cases had resulted in the closure of their individual cases. As discussed in detail above, Respondents did not receive notice of the January 8, 2014 hearing despite being entitled to such notice, and Ms. Gray had a good faith basis to believe that the January 8, 2014 hearing was an *ex parte* meeting between the circuit court, the Board, and Normandy. And, after the January 8, 2014 hearing, the circuit court issued an order consolidating the cases, and the docket indicated that the individually filed cases had been closed. Overall, Respondents' statements did not constitute knowingly false statements. *Cf. Attorney Grievance Comm'n v. Frost*, 437 Md. 245, 260-62 (2014) (holding that lawyer violated MLRPC 8.2(a) where, in an email that was later disseminated to members of the Bar, the lawyer stated that a particular judge "was

- 92 -

a lawless judge" and accused the judge of "arranging for deputy sheriffs . . . to illegally arrest him." (brackets omitted)).

In this case, Respondents' assessment that the circuit court was protecting the referendum opponents is troubling. However, Respondents did not identify a specific judge to whom they attributed bias or improper conduct, and their assessment was based on the circuit court having conducted a hearing about the Board's motion to dismiss and consolidation of Respondents' cases without them being present. The comment was contained in an appellate filing and not disseminated to others. Under the totality of the circumstances, there is not clear and convincing evidence that Respondents' statements about the circuit court violated MLRPC 8.2(a)

Regarding the letter to the editor published in the *Baltimore Sun*, the letter was critical of the developers and Mr. Erskine, not of a particular judge or legal officer.[18] Regarding the statement in the *Baltimore Sun* article concerning the Court of Special Appeals that was attributed to Ms. Gray—"Unreported opinions are the way the appellate courts do their political dirty work . . . that tells you a lot."—as the hearing judge found, there was not clear and convincing evidence of the accuracy of the attribution of the quote because no one from the *Baltimore Sun* or any other witness testified as to the accuracy of the attribution. In other words, there was not clear and convincing evidence that Ms. Gray

---

[18] Any statements made by Respondents critical of Mr. Erskine do not fall within the purview of MLRPC 8.2(a) because Mr. Erskine was a lawyer in private practice and not a judge, adjudicatory officer, or public legal officer, or a candidate for election or appointment to judicial or legal office.

actually made the quoted statement.  Therefore, we overrule the Commission's exception on this point.

*MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 8.4(c).  The Commission contends that Respondents violated MLRPC 8.4(c) by seeking to mislead the appellate courts as to the procedural posture of the case in the circuit court and by "corrupt[ing] the discovery process" by advising their clients not to attend depositions in opposition to the circuit court's order.  The Commission specifically points to the first, third, and fifth petitions for a writ of certiorari in support of its contention.  We overrule the exception.

"It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."  MLRPC 8.4(c).

Here, the hearing judge was correct in concluding that there was not clear and convincing evidence that Respondents violated MLRPC 8.4(c).  With respect to the appellate filings, as to the first petitions for a writ of certiorari filed on March 18, 2014, in connection with Case No. 213 and Case No. 230, Ms. Gray sought direct review by this Court of the circuit court's denial of the motion to alter or amend judgment of the closing of the cases "without any review of [the cases'] merits."  This statement did not misstate the procedural posture of the cases or otherwise misrepresent that the circuit court had reviewed the merits of those cases; indeed, the petitions expressly stated that the circuit court had closed the cases without reviewing the merits.  In the third petition for a writ of certiorari filed on May 6, 2014, Respondents sought review of the circuit court's order

denying a motion to quash discovery, and argued that an interlocutory appeal was appropriate and that, as to the nonparty petition circulators, the order was a final order from which they had the right to appeal. Technically, the circuit court's order at issue in the third petition stayed the motion rather than denied the motion, but Respondents viewed the stay as a denial. We fail to discern how such a misstatement or misunderstanding constituted an intentional misrepresentation. And, as to the fifth petition for a writ of certiorari filed on July 14, 2014, Respondents stated that the circuit court had adjudicated the claims in the underlying cases in their entirety and that the circuit court had denied the motion to dismiss for res judicata. Respondents had filed the motion to dismiss based on res judicata because they believed the circuit court's May 28, 2014 opinion and order resolved all of the issues between the parties and that there was nothing left to be resolved. Thus, the statement in the fifth petition was based on Respondents' understanding of the procedural posture of the cases. Even if such an understanding was ultimately mistaken, we conclude that such a misstatement does not rise to the level of being an intentional misrepresentation. Indeed, the record does not demonstrate that, throughout the appellate filings in this Court and the Court of Special Appeals, Respondents made statements with the intent to engage in dishonesty or misrepresentation. And, we note that neither this Court nor the Court of Special Appeals imposed sanctions on Respondents for any appellate filings.

As to the contention that Respondents corrupted the discovery process and that such action constitutes engaging in dishonesty, fraud, deceit, or misrepresentation, we again reiterate that Respondents provided the best advice that they could to their clients and the

nonparty circulators, including the possible sanctions that could occur as a result of not attending depositions, with the goal of protecting their clients' and the nonparty circulators' rights. Ultimately, as explained earlier, the decision of whether or not to attend depositions was made by the individual clients and nonparty circulators, not by Respondents.

*MLRPC 8.4(d) (Conduct that is Prejudicial to the Administration of Justice)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 8.4(d). The Commission contends that Respondents violated MLRPC 8.4(d) by "burden[ing] the judicial process" and argues that "[v]irtually every step they took caused the courts, their clients and the other parties to expend needless time, resources and energy." We overrule the exception.

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." *Chanthunya*, 446 Md. at 602 (quoting *Shuler*, 443 Md. at 505).

Here, the hearing judge was correct in concluding that clear and convincing evidence did not establish that Respondents violated MLRPC 8.4(d). As the hearing judge stated, Respondents "provided adequate, but not necessarily perfect, pro bono legal representation that probably would not have otherwise been available to their clients," and they "sought to ensure that the First Amendment rights of their clients and nonparty circulators were protected from what they perceived to be unnecessary, improper and

overbroad discovery requests." Under the circumstances of this case, we fail to discern that Respondents' conduct in the underlying litigation violated MLRPC 8.4(d).

*MLRPC 8.4(a) (Violating the MLRPC)*

The Commission excepts to the hearing judge's conclusion that Respondents did not violate MLRPC 8.4(a). The Commission contends that, because Respondents have violated multiple MLRPC, they have also violated MLRPC 8.4(a). We overrule the exception with respect to Ms. Gray and sustain the exception with respect to Mr. Dyer.

"It is professional misconduct for a lawyer to[] violate . . . the [MLRPC]." MLRPC 8.4(a).

Here, the hearing judge was correct in concluding that clear and convincing evidence did not establish that Ms. Gray violated MLRPC 8.4(a) because she did not violate any MLRPC. We reverse the hearing judge's conclusion that Mr. Dyer did not violate MLRPC 8.4(a) because, as discussed above, Mr. Dyer violated MLRPC 8.1(b).

**C. Sanction**

Bar Counsel recommends that we disbar Respondents. Respondents recommend that we dismiss all charges against them.

In *Attorney Grievance Commission v. Allenbaugh*, this Court stated,

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

> In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's

mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with [the Maryland Rules or orders of Bar Counsel]; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

450 Md. 250, 277-78 (2016) (brackets omitted) (quoting *Shuler*, 443 Md. at 506-07).

In *Bridges*, discussed above, where the lawyer violated MLRPC 8.1(b) when he responded to Bar Counsel's letters "by challenging Bar Counsel's jurisdiction and requesting further information," 360 Md. at 513, we determined that a reprimand was the appropriate sanction. *Id.* at 517. Similarly, *Attorney Grievance Commission v. Butler*, this

Court reprimanded a lawyer who violated MLRPC 8.1(b) by failing to respond promptly to two lawful requests for information from Bar Counsel. 441 Md. 352, 359-63. We noted that the lawyer "seemingly 'stuck his head in the sand,' apparently out of an irrational fear of Bar Counsel." *Id.* at 361. In concluding that a reprimand was the appropriate sanction, we explained,

> Giving [the lawyer] the benefit of the doubt that he received only the two December 2012 letters, the hearing judge found that [the lawyer] failed to respond to Bar Counsel for approximately two months, between December 5, 2012 and February 12, 2013. We neither condone [the lawyer]'s irrational fear of Bar Counsel nor his delay in responding to Bar Counsel. Failing to respond in a timely manner to Bar Counsel's lawful requests for information is sanctionable conduct.

*Id.* at 362-63 (footnote omitted).

Furthermore, in *Attorney Grievance Commission v. Weiers*, this Court reprimanded a lawyer who violated MLRPC 1.15(a) (Safekeeping Property), MLRPC 8.1(b) (Disciplinary Matters), and Maryland Rule 16-607 (Commingling of Funds) by withdrawing the remaining balance of a client retainer a year after having completed the work and then failing to fully cooperate with Bar Counsel. 440 Md. 292, 312 (2014). In concluding that a reprimand was the appropriate sanction, we noted that the lawyer's misconduct caused no injury to his client, the lawyer had no prior attorney discipline, the lawyer did not have a dishonest or selfish motive, and the lawyer ultimately responded to Bar Counsel and participated in the disciplinary proceeding. *See id.* at 311-12.

Here, Mr. Dyer violated MLRPC 8.1(b) by failing, indeed, refusing, to adequately respond to Bar Counsel's lawful demands for information. As to Mr. Dyer's mental state, on multiple occasions, Mr. Dyer knowingly declined to respond to the substance of Bar

Counsel's requests for information.  When faced with Bar Counsel's willingness to accept a waiver of confidentiality, Mr. Dyer persisted in his refusal to respond.  Mr. Dyer's misconduct did not injure any of his clients or third persons, and there is no indication that Mr. Dyer's conduct was motivated by personal gain.  Upon our independent review, we note no aggravating or mitigating factors.  Overall, we conclude that, consistent with existing precedent, namely *Bridges*, *Butler*, and *Weiers*, the appropriate sanction for Mr. Dyer's misconduct is a reprimand.

As to Ms. Gray, because there is not clear and convincing evidence that she violated any MLRPC, we shall dismiss the charges against her.  In sum, for the above reasons, we hereby dismiss the charges against Ms. Gray and reprimand Mr. Dyer.[19]

> **IT IS SO ORDERED; PETITIONER SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF ALLEN RAY DYER AND SUSAN BAKER GRAY AGAINST THE ATTORNEY GRIEVANCE COMMISSION.**

---

[19] Although we reprimand Mr. Dyer, as indicated in the mandate, we do not assess the costs against him; rather, we assess the costs against the Commission.  We note that Bar Counsel brought numerous charges against Mr. Dyer, and, upon our independent review, we conclude that Dyer has engaged in misconduct involving only one violation of the MLRPC, MLRPC 8.1(b), for which he is hereby reprimanded.  Only a fraction of costs of the attorney discipline proceeding can be attributed to the charged violation of MLRPC 8.1(b).  We conclude that, under these circumstances, ordering costs against Mr. Dyer is inequitable.  Even having Mr. Dyer and the Commission split the costs would not be equitable given that a large portion of the costs are due to alleged violations of the MLRPC that were not sustained and that the Commission failed to prove are supported by clear and convincing evidence.  And, as determined above, none of the charged violations against Ms. Gray were proven with clear and convincing evidence.  Accordingly, we shall assess the costs against the Commission.